WISCONSIN TRANSPORTATION COMPANY, Respondent, vs. GREAT LAKES CASUALTY COMPANY and another, Appellants.

*November 10—December 8, 1942.*

For the appellants there was a brief by *Dougherty, Arnold & Kivett,* and oral argument by *William Doll,* all of Milwaukee.

For the respondent there was a brief by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee and *Lewis G. Brown* of Lake Geneva, and oral argument by *Gerald P. Hayes.*

FRITZ, J. For the determination of this appeal it suffices to note the following facts, which in part are undisputed, but, in so far as they are in dispute, were found by the court upon evidence which fully sustains the findings. On July 18, 1937, while one of the plaintiff Wisconsin Transportation Company's employees, Julian Stuyvesant, was operating the

"Tula," a pleasure boat which plaintiff used in its business of carrying passengers on Lake Geneva, Glenn Baker was a guest or passenger in a speedboat, which was being operated at a high speed and encircled the Tula in such close proximity that Stuyvesant was fearful that there might be a collision which would endanger the lives of the forty-five passengers on the Tula. The speedboat and its occupants were making such noise that Stuyvesant could not attract their attention by shouting. Therefore, to prevent what he considered a dangerous situation to his passengers, he determined that the only way to attract the attention of the occupants of the speed boat was by throwing some missile toward it. For that purpose, but without intending to hit anyone, Stuyvesant threw a pop bottle which fell short; and then threw a second bottle which hit Baker on the head and injured him severely. Plaintiff immediately gave written notice of the accident to the Great Lakes Casualty Company (hereinafter called "defendant"), and when Baker made a claim for damages against plaintiff, it immediately transmitted the claim to defendant. At the time of the accident there was in force and effect a public-liability policy issued to plaintiff by the defendant, in which it was provided (so far as here material) that defendant agreed:

"I. To insure the assured, . . . against loss from the liability imposed by law upon the assured for bodily injuries or death, . . . accidentally suffered . . . by any person or persons not employed by the assured, caused by . . . (b) any operations described in the statements conducted by the assured on the insured premises while such person or persons is within or upon such premises, . . . or while such person or persons is away from the premises, if caused by an employee of the assured engaged in the disclosed business operations who is required in the discharge of his duties to be off such insured premises. . . .

"II. A. To investigate all accidents covered by this policy, and to defend, until the company elects to pay its limit of

liability, in the name and on behalf of the assured any claim or suit covered by this policy, and brought against the assured, whether groundless or not, for damage suffered or alleged to have been suffered on account of such bodily injuries or death, and . . .

"B. If the company is liable for any judgment, to pay all costs taxed against the assured in any suit for damages covered hereby. . . ."

And that, "As soon as reasonably possible after the occurrence of every accident, the assured shall give the company, or the nearest claim representative of the company, . . . immediate written notice thereof with the fullest information obtainable at the time."

and "like notice with full particulars of any claim made on account of such accident;" and "If suit is brought against the assured, the assured shall immediately forward to . . . the company, . . . every summons or other process that may be served upon him. . . . The company shall have the exclusive right to settle any claim or suit at its cost at any time. . . ."

By an indorsement it was agreed that the policy would extend to and cover all operations undertaken by the "assured" including the maintenance, ownership, control, and use of various vessels and boats. In reply to the written notice of the accident and of Baker's claim, which was given defendant by plaintiff, in connection with its request for coverage under the policy issued to it by the defendant, the latter by its attorneys at Milwaukee informed plaintiff by letters in August, 1937, that the injuries sustained by Baker were not accidental within the wording of the policy, and that therefore there was no coverage under the policy for that type of accident, and accordingly defendant's attorneys were referring the accident back to plaintiff for further handling.

In reply thereto plaintiff's attorney stated in a letter to defendant's attorneys:

"It is the intention of the Wisconsin Transportation Company to hold you liable under the policy for any damages recovered by the claimant on such claim. You are now invited to

participate in the defense of this claim, as you are obligated so to do under the above policy; and the Wisconsin Transportation Company will assist, under your direction, in the defense of said claim, in any manner within its power. In case you persist in maintaining the position that your company is not liable to the Wisconsin Transportation Company under the above policy on account of the said accident, it will be necessary for the Wisconsin Transportation Company to make what defense it can against the claim of E. J. Baker, or, in its best judgment, if it deems necessary, to make an adjustment thereof. Any adjustment made by the Wisconsin Transportation Company for damages by way of settlement of said claim the Wisconsin Transportation Company will expect to be reimbursed by you under said policy."

In correspondence in March, 1938, plaintiff's attorney advised defendant's attorneys of suggested offers for the settlement of Baker's claim, and defendant's attorneys in reply again stated that defendant had taken the attitude there was no coverage and would make no contribution toward settlement. On July 11, 1939, Baker commenced action to enforce his claim, and on July 14, 1939, plaintiff by a letter by its attorneys tendered the defense of the action to defendant and inclosed a copy of Baker's complaint. Thereupon defendant's attorneys on July 28, 1939, wrote plaintiff's attorneys that the letter of July 14, 1939, and the inclosed complaint had been referred to them by defendant,—

"with the request that we arrange with the Wisconsin Transportation Company to handle the defense of this action on a reservation-of-rights agreement by the terms of which the Great Lakes Casualty Company would defend the action, reserving its right to disclaim liability under its policy subsequently, should a judgment be entered in favor of the plaintiff and against said Transportation Company, it being claimed by the Great Lakes Casualty Company that the claims of the said plaintiff, Glenn Baker, are not covered under the policy of insurance which had been issued to the Wisconsin Transportation Company and which was in effect at the times alleged in the complaint.

"In the light of our conference with you, with your co-counsel, Lewis G. Brown of Lake Geneva, and Mr. Lichty of the Wisconsin Transportation Company, we understand that the Transportation Company will not consent to the handling of this matter under a reservation-of-rights agreement and therefore, inasmuch as the Great Lakes Casualty Company, and we, as its attorneys take the position that there is no liability to the plaintiff, Glenn Baker or for the incident occasioned in his claim under the said policy of insurance, we hereby tender the defense of this action back to the Wisconsin Transportation Company, and said company will have to assume the burden of defending this action themselves and this communication may be taken as a denial of any and all liability under the said policy of insurance for any claims made by the plaintiff, Glenn Baker, as the result of the incident of July 18, 1937, set forth in his complaint."

Thereafter, on the eve of a trial, the Baker action was settled with the knowledge of the defendant's attorneys, who were present during the negotiations for settlement between the attorneys for plaintiff and for Baker at conferences which were attended also by the judge of the trial court. Upon the payment by plaintiff to Baker of the amount agreed upon in settlement, and the defendant's refusal to reimburse plaintiff for that amount and for the amounts which it necessarily expended for disbursements and attorneys' fees in defending itself against Baker's claim and action, the plaintiff instituted the present action to recover those amounts from the defendant herein.

In connection with the above-stated matters, the court found and concluded in this action that the assault, alleged to have been committed upon Baker by Stuyvesant, was not provoked by Baker, and that from his standpoint his injuries were accidentally sustained; that the defendant's refusal by its attorneys' letter of July 28, 1939, to defend Baker's action against plaintiff, except upon a reservation-of-rights agreement with plaintiff as demanded in that letter, was in violation of the terms, provisions, and conditions of the policy of in-

surance issued by defendant to plaintiff; that under the contract entered into with the defendant when the policy was issued, plaintiff was under no obligation to enter into any agreement with the defendant with respect to the defense of the Baker action or with respect to the reservation of rights proposed by defendant in the event it defended that action, that under the terms of its policy defendant was obligated to defend; that as between plaintiff and Baker there was liability upon the plaintiff herein because of the casualty in question, and as between plaintiff and defendant herein the latter owed the plaintiff coverage under the policy of insurance and by the terms, provisions, and conditions thereof was obligated to defend plaintiff in the Baker action; that defendant illegally and erroneously, and in bad faith, refused to grant such coverage to plaintiff, and to reimburse it for the costs and expenses incurred by said plaintiff as a result of that casualty because of defendant's refusal to comply with the policy of insurance; that plaintiff did not violate any of the terms, provisions, and conditions thereof; and that plaintiff is entitled to judgment against defendant for the amounts which it paid for the release, attorneys' fees, disbursements for witness fees, and other expenses, together with interest thereon.

On its appeal, defendant contends that the policy of insurance issued by defendant did not afford coverage for injuries resulting from a provoked assault; and that there was error in the court's conclusion that the assault committed by Stuyvesant was not provoked by Baker and that therefore, from his standpoint the injury was accidentally sustained and within the coverage of the policy. Defendant's contention that there was prejudicial error in the court's conclusion in the respects last stated cannot be sustained. It is clearly evident under the evidence that at the time Stuyvesant's conduct caused the injury to Baker, Stuyvesant was engaged in the discharge of his duty, in the course of his employment by plaintiff, to safeguard the passengers on the Tula by attempting to avoid an imminently

dangerous situation; and that there was no intention on the part of Stuyvesant to strike or injure Baker or anyone else in throwing the bottles to merely attract the attention of the occupants of the speedboat, which was creating that situation. On the other hand, there is no evidence that Baker had anything to do with the operation of the speedboat, or that there was any conduct on his part which can be deemed to have provoked any assault upon him by Stuyvesant. As there, consequently, are no circumstances whatever because of which the alleged assault on Baker can be deemed to have been of his own provocation, his injury was, from his standpoint, "accidentally suffered" within the meaning of that term as used, in the above-quoted provisions of the policy, in relation to the coverage afforded thereby. *Fox Wisconsin Corp. v. Century Ind. Co.* 219 Wis. 549, 551, 263 N. W. 567; *Archer Ballroom Co. v. Great Lakes Cas. Co.* 236 Wis. 525, 295 N. W. 702. As we said in the *Fox Case,*—

"Whether or not an injury is accidental under the terms used in the policy here involved is to be determined from the standpoint of the person injured. . . . The facts show that the injury to the patron came to him through force not of his own provocation. From his standpoint, then, the injuries were 'accidentally sustained' [citing a case]. In the absence of some provision in the policy which excludes liability for such injuries, the meaning of 'accidentally sustained' becomes plain and controlling."

Defendant further contends that the court erred in holding that the plaintiff was under no obligation to enter into any agreement with the defendant with respect to the defense of the Baker action or the reservation of rights by the defendant in the event it defended the action; and in further holding, in this connection, that under the terms of the policy defendant was obligated to defend the Baker action, and if it desired to negative any waiver of its rights by so defending, all it had to do was to notify plaintiff that by so defending it was not

waiving any of its rights or defenses in respect to coverage or its liability. As the trial court rightly said,—

"It has been held in two recent cases, *Hickey v. Wisconsin Mut. Ins. Co.* 238 Wis. 433, and *New Amsterdam Casualty Co. v. Simpson,* 238 Wis. 550, that an insurer does not waive its defenses by defending an action. . . . Under the terms of the policy in question the defendant was obligated to defend the action. If it desired to negative any waiver of its rights by so defending all that was necessary for it to do was to notify the defendant in that action and the plaintiff in this action that by so doing it was not waiving any of its rights or defenses with respect to coverage or liability."

Although defendant could by giving such notice negative any waiver of such rights or defenses on its part, it was not entitled to insist that plaintiff execute the reservation-of-rights agreement which defendant demanded. When the policy was issued defendant had entered into a contract with plaintiff which definitely fixed, in all essential respects, the intended obligations and rights of the parties, respectively, and plaintiff was under no obligation to enter into any supplemental or additional agreement with the defendant in respect to the plaintiff's defense of Baker's claim or the reservation of rights by the defendant in the event it defended on behalf of plaintiff the action brought against it by Baker. When the accident happened and also when plaintiff duly reported the occurrence thereof to defendant, there was in full force and effect the provision in the policy which expressly and unconditionally required defendant—

"To investigate all accidents covered by this policy, and to defend, . . . in the name and on behalf of the assured any claim or suit covered by this policy, and brought against the assured, whether groundless or not, for damage suffered or alleged to have been suffered on account of such bodily injuries or death. . . ."

There is no provision of the policy which entitled defendant to require the execution by the assured of a reservation-of-

rights agreement or a nonwaiver agreement, in order to continue to be entitled to have the defendant perform its obligation as the insurer under that provision. Even though Baker's claim or action might ultimately be determined to be groundless, the provision entitled the assured to have Baker's claim on account of the accident, which from his standpoint was "accidentally sustained," investigated and defended on behalf of the assured; and defendant's refusal in those respects was clearly in violation of its policy and by reason thereof plaintiff was entitled to recover the judgment under review.

There is no basis in the record for defendant's contention that plaintiff failed to comply with the conditions of the policy by refusing to permit defendant to defend the Baker action. Throughout the correspondence and dealings between the parties, it is evident that plaintiff at all times consistently requested and demanded that defendant perform its obligation to investigate the claim made by Baker and to also defend on behalf of plaintiff the action which he brought against plaintiff. Neither is there any basis in the record because of which plaintiff can be deemed estopped to recover from defendant as provided in the judgment under review.

*By the Court.*—Judgment affirmed.