Jackson N. Huddleston, of Huntington, W. Va. (E. A. Marshall and Fitzpatrick, Strickling & Marshall, of Huntington, W. Va., on the brief), for appellant.

John E. Jenkins, of Huntington, W. Va., for appellee.

Before GRONER, Chief Justice of U. S. Court of Appeals for District of Columbia, and SOPER and DOBIE, Circuit Judges.

**HUNTINGTON CAB CO. v. AMERICAN FI-DELITY & CASUALTY CO., Inc.**

No. 5478.

Circuit Court of Appeals, Fourth Circuit.

May 8, 1946.

SOPER, Circuit Judge.

We are called upon to decide whether an automobile liability insurance policy issued to the Cab Company by the Casualty Company covers the Cab Company with respect to a judgment rendered against it in favor of a passenger in one of its cabs for an unprovoked assault and battery committed upon him by the driver of the cab. It is contended that, while the policy is broad enough to cover a claim by the passenger,

it does not cover the Cab Company for the amount paid by it in satisfaction of the judgment.

By the terms of the policy the Casualty Company agrees to indemnify the Cab Company:

"Against loss from the liability imposed by law upon the assured arising or resulting from claims upon the Assured for actual damages to persons accidentally receiving bodily injuries, and damage to property by reason of the ownership, maintenance or use of any of the automobiles or motor vehicles as enumerated and described in Statement VI of the schedule of statements only while being operated for the purposes stated and subject to the limitations in Statement VIII of said schedule, to an amount not exceeding the limits hereinafter stated in Statement IV of said schedule, if such claims are made on account of

"(1) Bodily injury or death suffered by any person or persons, other than the Assured or his employees, as the result of an accident occurring while this Policy is in force; * * *". (It is conceded that the cab involved in the passenger's suit was enumerated and described in Statement VI and was being operated within the limitations of Statement VIII and that the amount of the judgment was within the limits set out in Statement IV of the schedule.)

The Casualty Company also agrees in the policy to defend on behalf of the assured any suit brought against it to enforce a claim for damages suffered on account of bodily injuries or death as the result of an accident covered by the policy and caused in the manner and under the circumstances described.

The policy carries an endorsement required by Ch. 24A, Art. 5, § 5(g) of the West Virginia Code whereby the Casualty Company "agrees to pay any final judgment recovered against the Insured for bodily injury to or the death of any person or loss of or damage to property of others (excluding injury to or death of the Insured's employees while engaged in the course of their employment, and loss of or damage to property of the Insured, and property transported by the Insured, designated as cargo), resulting from the neg-

ligent operation, maintenance, ownership, or use of motor vehicles under certificate of convenience and necessity or permit issued to the Insured by the Public Service Commission of West Virginia, or otherwise under the Motor Carrier Law, within the limits of liability hereinafter provided, regardless of whether such motor vehicles are specifically described in the policy or not."

This endorsement further provides that upon the failure of the Casualty Company to pay any such final judgment, the judgment creditor may maintain an action in any court of competent jurisdiction against the Casualty Company to compel such payment.

While the policy was in force, a passenger for hire in one of the taxis covered by the policy was violently assaulted by an employee and agent of the Cab Company operating and driving the cab. The passenger brought an action against the Cab Company wherein it was alleged that the Cab Company, having accepted him in the course of its operations as a common carrier for hire, owed him the duty to use due care to carry him safely to his destination but disregarded and neglected this duty and failed to use due care and neglected to carry him safely to his destination in that the driver of the taxi committed the assault above described. The Cab Company called upon the Casualty Company to assume the defense of this action in accordance with the terms of the policy but the Casualty Company refused to do so on the ground that the claim asserted by the passenger was not covered by the policy. Accordingly, the Cab Company assumed the defense of the suit which resulted in a judgment, including costs and counsel fees, in the sum of $3,013.75.

The present suit was brought to compel the Casualty Company to reimburse the Cab Company under the agreement of indemnity for its outlay in satisfaction of the judgment. The suit failed in the District Court because the judge, while of the opinion that the injuries suffered by the passenger were "accidentally" received, came to the conclusion that the injuries were not received by reason "of the ownership, maintenance or use of the [cab]." See D.C., 63 F.Supp. 939, 945.

■ We are in accord with the view that the passenger's claim upon the Cab Company was for actual damages to a person "accidentally receiving bodily injuries" within the words of the policy. The District Judge showed in his opinion that under accident and life insurance policies and under public liability policies covering places of business such as a theatre or filling station, the overwhelming weight of authority holds that an injury is accidentally received when, without fault of the injured person, it is intentionally inflicted by another. The matter is determined from the standpoint of the injured person and not from the standpoint of the aggressor. If the injury is caused by the insured himself or by his employee with his authority or consent, it is not accidental under either form of policy, and so coverage is denied; but where an intentional injury is inflicted by an employee of the insured without the latter's authority or consent, it is generally held, a few decisions to the contrary, that the injury is suffered as the result of an accident within the meaning of the contract of insurance. Georgia Casualty Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408; Archer Ballroom Co. v. Great Lakes Casualty Co., 236 Wis. 525, 295 N.W. 702; Fox Wisconsin Corporation v. Century Indemnity Co., 219 Wis. 549, 263 N.W. 567; Westerland v. Argonault Grill, 187 Wash. 437, 60 P.2d 228; E. J. Albrecht Co. v. Fidelity & Casualty Co., 289 Ill.App. 508, 7 N.E.2d 626; Floralbell Amusement Corp. v. Standard S. & Cas. Co., 256 App.Div. 221, 9 N.Y.S.2d 524; 71 U.S.Law Rev. 5. Cf. Cordon v. Indemnity Ins. Co. of North America, 6 Cir., 123 F.2d 363.

The ground upon which the adverse decision of the District Court is based is thus stated in the judge's opinion (63 F.Supp. 942): "The real reason for denial of coverage is that McCallister (the passenger) did not receive his injuries 'by reason of the ownership, maintenance or use of any of the automobiles' covered by the policy. The assault did not arise out of the operation of the automobile. There is no causal relation between the assault and the actual operation of the taxicab." This holding is supported by the opinion in National Mutual Casualty Co. v. Clark, 193 Miss. 27, 7 So.2d 800, 140 A.L.R. 927, where the provisions of the policy and the pertinent facts were very similar to those in the instant case. The court took the view that such a policy is not intended as a general liability policy indemnifying the insured against liability for all personal misconduct of its employees engaged in the operation of one of the listed vehicles. Specific exceptions in the contract indicating that the liability of the insurer was not coextensive with the liability of the insured under the doctrine of respondeat superior were pointed out; and it was held that the liability of the insurer was limited to the indemnification of the insured for liability arising out of the operation of the cabs in the usual business of the transfer of passengers for hire; that the insurance did not cover the conduct of the business but the use of the automobiles; and that an assault by a driver was not covered by the policy unless the vehicle itself was accessory to or produced the injury. For other decisions see the cases listed in the opinion of Judge Watkins, 63 F.Supp. 943.

■ This view is not without rational basis, but in our opinion it involves an interpretation of the language of the policy that is unduly strict and narrow when the general purpose to be served by the policy is considered. It may be noted in the first place that the kind of claim here involved is not listed among the exclusions or liability limitations in the policy, such as the liability of the assured to any of its employees, or the liability for an accident occurring while any of the vehicles are being driven by persons under eighteen years of age or while they are being used for the purpose of towing another vehicle. The language is broad and general. It includes indemnity against loss for liability imposed by law upon the insured arising from claims for damages to persons accidentally receiving bodily injuries by reason of the ownership, maintenance or use of the automobiles.

These terms, it is admitted, include claims for damages to passengers as well as damages to members of the general public, so that, for example, the claim of an occupant of a cab, as well as the claim

of a pedestrian or the occupant of another automobile who may be injured in a collision, would furnish the basis of a loss for which the Cab Company would be entitled to indemnity. The general purpose of the contract to protect the insured from the claims of the traveling public, as well as the claims of others for injury as the result of the use of the cabs, cannot be denied. Why then should the policy be so interpreted as to indemnify the Cab Company for loss from the claim of a passenger occupying a cab in one set of circumstances but not in another? Why should the liability of the Casualty Company to the Cab Company depend upon whether the cab itself participated physically in the passenger's injury? The only answer offered is that under the policy the injury must occur "by reason of the ownership, maintenance or use of the cab". These terms do not in our opinion require that the automobile itself produce the injury as is suggested in the decisions upon which the District Judge relied. They are equally satisfied if the injury is incidental to or grows out of the relationship of carrier and passenger which in this form of transportation necessitates personal dealings and contact between the driver and the passenger in the use of the cab. Whether the driver inflicts an injury upon the passenger by reckless management of the vehicle, or so far forgets his duty to carry the passenger safely as to inflict an injury upon him by physical violence, in either case the injury is made possible and derives from the use of the cab.

The choice lies between the interpretation placed upon the phrase by the Casualty Company and the interpretation of similar language adopted in Green Bus Lines v. Ocean Acc. & Guaranty Corp., 287 N.Y. 309, 39 N.E.2d 251. It is not without significance that this decision reversed the holding of the Appellate Division in this case, 262 App.Div. 759, 29 N.Y.S.2d 147, and also repudiated the reasoning of Baron v. Automobile Mutual Indemnity Co., 247 App.Div. 731, 285 N.Y.S. 486, upon both of which the Mississippi court in National Mutual Casualty Co. v. Clark, supra, and the District Court in the pending case relied in reaching their conclusions. The passenger in Green Bus Lines v. Ocean Acc. & Guaranty Corp. got a judgment for damages against the Bus Company for injuries suffered at the hands of a fellow passenger whom the driver of the bus negligently failed to restrain. It was urged that the Guaranty Corporation was not bound to indemnify the Bus Corporation because the insurance was limited to an agreement to indemnify the insured for liability imposed by law for damages for injuries to persons "resulting from the ownership, operation, maintenance, use or defective construction of" the busses. [289 N.Y. 309, 39 N.E. 2d 254.] The words, it was said, should be restricted so as to apply only to accidents occurring upon the streets and highways. The court rejected this construction and pointed out that the policy conformed to § 17 of the Vehicle and Traffic Law of New York, Consol.Laws, c. 71, which required the Bus Line to secure a policy of insurance conditioned for the payment of judgments against the Bus Corporation for injuries caused "in the operation, maintenance, use or the defective construction of such motor vehicle." Holding that the purpose of § 17 of the statute indicated that the words were used in a sense sufficiently broad to cover the kind of accident in suit, the court said (287 N.Y. at pages 315, 316, 39 N.E.2d at page 254): "In the case at bar the assured is entitled to rely upon the wording of its policy construed in accordance with the wording of section 17 of the Vehicle and Traffic Law. In neither the policy nor section 17 does there appear an intention to use these words in a sense so as to exclude this class of liability from the general phrase 'liability imposed by law.' The words 'any sums which the insured may become obligated to pay by reason of the liability imposed by law * * * for damages * * * to persons * * * resulting from the ownership, (and) operation * * *' are words of very broad significance and as used in their ordinary sense, would include the total liability imposed by law upon the plaintiff as a common motor carrier no matter whether such liability arose from a street accident or otherwise. It would not seem reasonable to

place so restrictive an interpretation upon these words as to segregate from all liabilities imposed by law, liability arising as in the case at bar, and thus leave unprotected a passenger injured in this manner. It is submitted that such an interpretation was never intended by the Legislature in the enactment of section 17 of the Vehicle and Traffic Law, by the Commissioner in approving the form of policy to carry out such section, or by the parties in contracting for this insurance thereunder."

We think that this interpretation of the crucial phrase is sound and should be applied to the terms of the policy in the case at bar. See also Grant v. Knepper, 245 N. Y. 158, 156 N.E. 650, 54 A.L.R. 845; Surburban Service Bus Co. v. National Mutual Casualty Co., 237 Mo.App. 1128, 183 S.W.2d 376; Roche v. United States F. & G. Co., 247 App.Div. 335, 287 N.Y.S. 38; Panhandle Steel Products Co. v. Fidelity Union C. Co., Tex.Civ.App., 23 S.W.2d 799, 801.

The analogy is very close to the situation which arises under public liability policies that insure the operator of a place of business such as a theatre against loss, by reason of his liability for damages for injuries which result from the ownership, maintenance or use of the place. Such policies are held to cover not only an injury caused by the defective condition of the place but also injuries suffered by reason of an assault by an employee or an assault by another patron whom the management fails to take reasonable care to restrain. See Fox Wisconsin Corporation v. Century Indemnity Co., 219 Wis. 549, 263 N.W. 567; Wisconsin Transportation Co. v. Great Lakes Casualty Co., 241 Wis. 523, 6 N.W.2d 708; Floralbell Amusement Corp. v. Standard S. & Cas. Co., 256 App.Div. 221, 9 N.Y.S. 524; Washington Theatre Co. v. Hartford Accident & Indemnity Co., 157 A. 111, 9 N.J.Misc. 1212.

The Casualty Company points out that under the endorsement placed upon the policy pursuant to the West Virginia Motor Carrier Law, ch. 24A, Article 1, § 1, Article 2, §§ 1 and 3, and Article 5, § 5 of the State Code, its obligation to pay judgments secured by injured persons against the Cab Company is broader than its obligation to indemnify the Cab Company for judgments which it has itself paid. This is true because the endorsement covers motor vehicles whether specifically described in the policy or not and losses suffered by passengers and the general public regardless of whether the carrier has violated any of the provisions of the policy or operated its vehicles beyond the territory which it is authorized to serve. Moreover, the Cab Company agrees to reimburse the Casualty Company for any payment made by the latter which it would not have been obligated to make except for the provisions of the endorsement. But it does not follow that the indemnity provided for the protection of the Cab Company in the body of the policy should be given a narrow construction. Undoubtedly the motor carrier laws were designed primarily for the protection of the public but it does not serve this purpose to cut down the scope of the indemnity which the Cab Company has purchased for its own protection.

The judgment of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.