GERRARD REALTY CORPORATION, Plaintiff-Appellant, v.
AMERICAN STATES INSURANCE COMPANY, Defendant-
Respondent.†

Supreme Court

*No. 76–657. Submitted on briefs March 28, 1979.—*
*Decided May 1, 1979.*
(Also reported in 277 N.W.2d 863.)

† Motion for reconsideration denied, with costs, on June 29, 1979.

132

For the appellant the cause was submitted on the briefs of *Robert D. Johns, Jr.*, and *Johns, Flaherty & Gillette, S.C.*, of La Crosse.

For the respondent the cause was submitted on the brief of *Gerald C. Opgenorth* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

COFFEY, J. The appellant, Gerrard Realty, is a Wisconsin corporation engaged in the real estate brokerage business. The respondent, American States Insurance Co., insures Gerrard Realty pursuant to the terms and conditions of a "Real Estate Agents' Errors and Omissions Policy." The appeal challenges the lower court's judgment in relieving the respondent from liability under the terms of the insurance policy. The basis of the lower court's decision was the finding that the appellant failed to give American States Insurance Co. (hereinafter insurance company) timely notice of an insurable claim based upon the realtor's participation in a 1969 real estate purchase.

In September, 1969, Gary Rogness, a real estate broker employed by Gerrard Realty, represented Walter and Lela Goldsmith in the sale of their bakery to William and Nancy Miller. The Millers executed an offer to purchase the business on September 23, 1969 and during the course of the transaction, preceding the real estate closing, the Millers made several inquiries concerning whether the business complied with the city's health code. The broker, Rogness, informed the Millers that he would investigate the matter and obtain answers to their questions from Mr. Goldsmith. As a result of the Millers' inquiries, Rogness obtained from the Goldsmiths a restaurant inspection form dated October 7, 1969 reciting health code violations and signed by a city inspector, one Randolph G. Baier. The record reflects that prior to the October 25, 1969 closing, Mr. Goldsmith had informed the Millers on several occasions that all they had to do was move in and continue with the baking and restaurant business despite the violations reflected in the October 7th inspection report.

The real estate closing was conducted at Gerrard Realty's office and present with Gary Rogness was Clem Feldbruegge, an experienced real estate broker, and the Millers. Mrs. Miller was apprehensive in regard to the transaction as she and her husband had exhausted their borrowing capacity and she brought to the closing a memorandum consisting of several questions. Mrs. Miller asked if there was any danger of it being necessary for her and her husband to spend any more money on the business. In response, Mr. Feldbruegge became somewhat impatient with her and the inspection report of October 7th was again produced. Despite the inspection report indicating health code violations, the Millers, inexperienced in real estate matters, closed the transaction and took occupancy the following day. On November 11, 1969, less than one month after the closing, Baier,

the city health inspector, appeared on the premises and told Mrs. Miller the bakery and restaurant were being operated unlawfully because they were not licensed, and that the Millers should not have started operations without a pre-occupancy code violations inspection. Baier explained that there were numerous deficiencies present in the bakery and restaurant which had to be corrected. After the inspection of November 11th, a letter was sent to the Millers' attorney summarizing the defective conditions and reflecting the cost of repairs to be $677, excluding installation charges.

The Millers asked the Goldsmiths to rescind the contract and return the $6,000 purchase price. The Millers, failing in this request for rescission of the contract, commenced suit against the Goldsmiths, Rogness and the appellant, Gerrard Realty. An amended complaint was served on October 20, 1972 alleging that the Goldsmiths and Rogness, as Gerrard Realty's agent, had induced the Millers to purchase the property with fraudulent misrepresentations. Specifically, the amended complaint recites that the Goldsmiths and Rogness had:

(1) "falsely and fraudulently represented to the plaintiffs that the business was in complete and total compliance with any and all governmental standards and licensing requirements;" (2) "falsely and fraudulently represented to the plaintiffs that one bathroom was all that was so required and that the business and equipment was in such a state of compliance with any and all governmental standards and licensing requirements that plaintiffs could immediately assume the operation of the business without the expenditure of any money whatsoever for improvements or modifications;" and (3) "fraudulently induced plaintiffs from retaining an attorney to represent them in the negotiations and closing of the proposed real estate transaction; and that all such false and fraudulent representations were known or ought to have been known by said defendants to be false and fraudulent."

The Millers' suit was tried on August 9, 1974 and established as a fact that on October 7, 1969 Baier informed the Goldsmiths that prior to a change in ownership the bakery would require a pre-inspection for code violations because of the numerous health code violations. At the trial before Circuit Judge Merrill Farr, the Millers' case was presented on the alternative theories of fraudulent and negligent misrepresentation. The fact of the dual theories in fraud and negligence was acknowledged by the realtor's attorney following the completion of the Millers' trial wherein a letter to the insurance company dated August 16, 1974 gave notice to the respondent of the Millers' suit. The pertinent portions of the August 16th letter state:

"At the trial, it first became evident to me that the plaintiffs' attorney had another theory upon which to base a recovery. He proceeded on the alternative theories of fraud and negligent misrepresentation.

". . .

"I am explaining all of this to you because I now see that there may be insurance coverage under the errors and omissions insurance provided to Gerrard Realty Corp. given that we are dealing with a negligent act or omission rather than with fraud. A copy of the Amended Summons and Amended Complaint are enclosed for your review and you are asked to acknowledge that we have given notice concerning this claim."

The respondent-insurer thereafter denied coverage premised upon the appellant-realtor's failure to give timely notice of an insurable claim pursuant to the insurance contract terms dealing with "Notice of Claim or Suit" and "Defense Settlement and Supplementary Payments."

On April 3, 1976, Judge Farr found Gerrard Realty and its agent, Gary Rogness, liable for the negligent misrepresentations made to the Millers, thus inducing their purchase of the Goldsmiths' bakery. Judge Farr's memorandum findings recite that the Goldsmiths, from prior inspections, had knowledge that their bakery-restaurant

was not in compliance with the law and that Baier informed them that prior to any property sale or new occupancy they should immediately inform the health authorities of a proposed sale so that an inspection could be made. Further, the lower court's memorandum notes that the Goldsmiths were aware that since their business operation was marginal, the Health Department granted them certain concessions such as being permitted to operate with just one toilet room, with no hand washing facility in the kitchen and that their stove and other equipment were not only old but inadequate. As to the appellant Gerrard Realty, Judge Farr found that Rogness and Feldbruegge assumed the duty of making sufficient investigation or inquiry to answer the Miller's questions concerning the licensing of the bakery and that they were negligent in the performance of this obligation. On July 10, 1975 Judge Farr granted the Millers' motion to amend their pleadings to conform with the proof offered concerning the appellant's negligence and amended his decision finding that the Millers were twenty-five percent causally negligent for the damages incurred for failure to exercise reasonable care in making inquiry or investigation to determine the truth of what proved to be the misrepresentation.

On April 9, 1976 the appellant commenced an action against the insurance company alleging coverage pursuant to the terms of the Errors and Omissions Policy seeking to recoup the amount of the Millers' judgment and legal fees incurred. The realtor justifies not giving the insurer notice of the Millers' suit until twenty-two months after the commencement of the action since they believed the Millers' complaint alleging fraud would not be covered under a policy insuring only against the negligent acts of the appellant and its agents.[1] Further, Ger-

---

[1] "I. *Coverage.*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay on account of any claim made

rard Realty alleges that they were not required to give prior notice of the Miller claim as the complaint did not recite facts sufficient to set forth a cause of action in negligence. Judge Block, in deciding the question of Gerrard's insurance coverage, determined that the realtor's failure to give notice of the Millers' suit until some twenty-two months after the commencement of the action was a bar to their recovery under the terms of the policy. He further ruled that the extreme lapse of time was prejudicial to the insurance company as they were denied the opportunity to properly investigate, settle or defend the Millers' claim.

*Issue:*

Did the respondent-insurer receive timely notice of an insurable claim when the appellant-insured notified the insurer twenty-two months after the commencement of the action against the appellant and following the trial on the issue of liability?

The appellant contends that by giving the respondent notice of the Millers' suit even though after trial but prior to the rendition of judgment it fulfilled its duty of timely notice and thus the insurance company wrongfully denied coverage. The respondent argues that notice of an insurable claim not given until twenty-two months after the commencement of the Millers' claim against Gerrard Realty precludes coverage under the terms of the insurance contract for failure to give timely notice. The respondent contends that even though notice was given prior to the entry of judgment against the realtor but after the completion of the Millers' liability trial, this notice is untimely as the insurance company was not af-

against the insured and caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable in the conduct of their business as real estate agents."

forded the opportunity to participate in the investigation, settlement or trial of the claim.

In the present case, the appellant's insurance contract required a tender of notice of an insurable claim in the following language:

## "CONDITIONS"

"2. NOTICE OF CLAIM OR SUIT. *As soon as practicable* notice must be given the company on insured receiving information as to his alleged negligent act, error or omission, with full particulars of any claim arising therefrom. *If suit is brought the insured must immediately forward to the company every summons or other process received by him.*

"II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.

" . . .

" (A) Defend in his name and behalf any claim or suit against the insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; *but the company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the company;* . . ." (Emphasis supplied.)

The appellant contends that the notice provision in the errors and omissions policy is ambiguous because it is impossible to determine whether their duty of notice arises at the time of the happening of an insurable occurrence or not until after they become aware of a potential claim or suit based upon the insurable event. The appellant relies upon *Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974) wherein the court stated that any ambiguity in the language of a liability policy must be resolved in favor of the insured. Thus, the realtor argues the notice provision in the subject policy must be interpreted as requiring notice to be

given when the appellant is initially informed of a suit covered under their contract of insurance.

In *Grieb v. Citizens Casualty Co.*, 33 Wis.2d 552, 148 N.W.2d 103 (1967) this court stated that the principles governing the construction of errors and omissions policies are the same as those applied to indemnity and liability policies. Therefore, any ambiguity in the present policy's notice provision should be construed in favor of the appellant. However, in the instant case we find the language of the errors and omissions policy to be clear and unambiguous.

The appellant contends it was not required to give notice of the Millers' suit until after the trial of the liability issue wherein the Millers first alleged a theory of negligence against the realtor and its agent. This contention ignores the underlying issue in this case and that is whether the Millers' complaint, allegedly sounding in fraud but reciting facts supporting a recovery on the theory of negligent misrepresentation, triggered the appellant's duty of notice under the insurer's errors and omissions policy.

In *Kolbeck v. Rural Mutual Ins. Co.*, 70 Wis.2d 655, 659, 235 N.W.2d 466 (1975) the court noted the purpose of the requirement that an insurer be given timely notice is to afford the liability carrier an opportunity to investigate possible claims against the policy or its insured while the witnesses are available and their memories are fresh. Thus, an insurance company's investigation of a claim cannot commence until the insured has fulfilled his duty of timely notice. The insurance company's right and obligation to make timely investigation are a condition precedent to their contractual duties of defense and coverage. In *State Bank of Viroqua v. Capitol Indemnity*, 61 Wis.2d 699, 214 N.W.2d 42 (1974) the court held that

the requirement of timely notice is a condition precedent to liability under the policy:

"We hold that where the giving of timely notice is required by the banker's blanket bond prior to the maturity of the liability of the insurer, such requirement is a condition precedent in fact to liability whether or not expressly so stated and is to be enforced as written whether or not its importance is emphasized by further language that noncompliance works a forfeiture or voids the policy." *Id.* at 709.

In *Grieb v. Citizens Casualty Co., supra,* we held that the insurer determines his duty to defend by looking to whether coverage is provided for causes of action alleged in an injured party's pleadings. The court stated this proposition in the following language:

"Whether a third-party suit comes within the coverage of this clause or within the coverage of an implied duty to defend under an indemnity clause depends upon its allegations which are referred to as a general rule as the measure in the first instance. These allegations must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy unless the express defense coverage is broader. *Aitchison v. Founders Ins. Co.* (1958), 166 Cal. App.(2d) 432, 333 Pac.(2d) 178. It is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent. *Wilson v. Maryland Casualty Co.* (1954), 377 Pa. 588, 105 Atl.(2d) 304; *Wisconsin Transportation Co. v. Great Lakes Casualty Co.* (1942), 241 Wis. 523, 6 N.W.2d 708; 7A Appleman, Insurance Law & Practice, p. 441, sec. 4683. *National Surety Corp. v. Musgrove* (5th Cir. 1962), 310 Fed.(2d) 256 (an errors-and-omissions policy). Conversely stated, 'the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual out-

come of the case,' 29A Am. Jur., Insurance, p. 565, sec. 1452." *Id.* at 557–58.

Certainly, an insurer cannot make a reasoned judgment as to its duty to defend or provide coverage until they have had the opportunity to examine and review the factual situation and the pleadings as they relate to the terms of their policy of insurance. Thus, an insured assumes authority he does not possess under the terms of the policy when he attempts to determine the question of policy coverage as pertaining to the insurance contract in question. We hold that the insured's duty to give timely notice under the fact situation in this case was triggered by the service of the complaint against the insured alleging the insured's involvement in an insurable transaction or occurrence. Therefore, it is not controlling that the causes of action stated in the complaint did not appear on their face to be within the policy's coverage in the judgment of the insured. In *State Bank of Viroqua v. Capitol Indemnity, supra,* this principle was clearly set forth in the following language:

"Ignorance of policy provisions or a belief that coverage is questionable is no excuse for failure to give notice of loss under the banker's blanket bond. In case of questionable coverage, notice of loss to the insurance company would start the investigative process in motion and resolve the uncertainty of coverage." *Id.* at 709.

Without exception, it is the insurance company's contractual right to make the determination of whether or not there is coverage, and it is not the insured's right or obligation to superimpose its own judgment.

In application to the present appeal, the appellant-realtor was required to give the respondent-insurer notice of the Millers' suit "as soon as practicable" at the very latest upon receipt of the service of the amended

complaint on October 20, 1972. In *RTE Corp. v. Maryland Cas. Co.,* 74 Wis.2d 614, 247 N.W.2d 171 (1976) the court stated that the definition to be applied to the term "as soon as practicable" was:

"The words 'immediately,' 'forthwith,' 'promptly,' 'as soon as practicable' all require notice in 'a reasonable time.' *See:* 5A Appleman, *Insurance Law and Practice,* secs. 3501–03, Annot., 18 A.L.R.2d 443, 448 (1951)." *Id.* at 627.

However, in determining the reasonableness of a delay in giving an insurer notice of a claim, it is well established that the mere passage of time, unless it is an unreasonable amount of time, does not as a matter of law constitute non-compliance with the notice provisions of the contract. *RTE Corp. v. Maryland Cas. Co., supra; Resseguie v. American Mut. Liability Ins. Co.,* 51 Wis.2d 92, 98, 186 N.W.2d 236 (1971). Rather, the circumstances of the particular case must be considered in ascertaining whether notice was given "as soon as practicable." *RTE Corp. v. Maryland Cas. Co., supra; Porter v. General Casualty Co.,* 42 Wis.2d 740, 168 N.W.2d 101 (1969).

In the present case, notice was not given to the insurance company American States, until twenty-two months had elapsed following the time the Miller suit was commenced. Further, this notice was not tendered until after the completion of the trial of the Millers' suit. In *RTE Corp. v. Maryland Cas. Co., supra* at 628, the court gave a comprehensive listing of Wisconsin cases wherein various periods of delay before notice was given were found not to be "as soon as practicable.":

"*Sanderfoot v. Sherry Motors, Inc.,* 33 Wis.2d 301, 147 N.W.2d 255 (1967) (Auto liability policy; delay of seven and one-half months not 'as soon as.practicable' as a matter of law; excuse based on apparently trivial nature of accident rejected on the facts.) ; . . . *Buss v. Clements,* 18 Wis.2d 407, 118 N.W.2d 928 (1963) (Auto liability policy; where insured knew of accident and injury at the

time, not 'as soon as practicable' to give notice three years later, as a matter of law.) ; *Britz v. American Ins. Co.*, 2 Wis.2d 192, 86 N.W.2d 18 (1957) (Insurance against theft of truck; unexplained delay of three months not 'as soon as practicable' as a matter of law.) ; *Calhoun v. Western Casualty & Surety Co.*, 260 Wis. 34, 49 N.W.2d 911 (1951) (Auto liability policy; delay in notice of one year, apparently unexplained, held not 'as soon as practicable' as a matter of law.) ; *Parrish v. Phillips*, 229 Wis. 439, 282 N.W. 551 (1938) (Auto liability policy; notice required 'as soon as practicable' after twenty days from accident; unexplained delay for additional thirteen days was noncompliance as a matter of law.) . . . ." *Id.* at 628–29.

Based upon the particular circumstances of this case, and the prior precedent reviewed above dealing with an insured's duty to give timely notice "as soon as practicable," we hold the twenty-two month delay in providing respondent notice of the commencement of the Millers' action constituted non-compliance with the policy's notice provisions as a matter of law.[2]

The only justification offered by the appellant for their failure to give notice prior to August 16, 1974 was that they unilaterally determined that policy coverage would not be extended as the Millers' complaint stated a cause of action for fraudulent misrepresentation and thus are excluded from policy coverage. As previously noted, not only is the question of determining coverage the exclusive right of the insurer, but also, ignorance of policy pro-

---

[2] In *RTE Corp. v. Maryland Cas. Co., supra,* the following was stated:

"Before a court may find noncompliance with notice provisions as a matter of law, it must be able to say that (1) there is no material issue of fact as to when notice was given, and when under the policy the duty to give it arose; and (2) no jury could reasonably find the delay to have constituted only such time as was 'reasonably necessary' under the circumstances." *Id.* at 628–29.

visions or a belief coverage is questionable is not an excuse for the failure to give notice. *State Bank of Viroqua v. Capitol Indemnity, supra* at 709. The appellant, Gerrard Realty, thus assumed responsibility beyond the terms of the notice provisions of the insurance policy. Further, the appellant certainly knew from the onset of the trial of the Millers' action that they were proceeding on the alternate theory of negligent misrepresentation. Thus, even if we had agreed that the service of the Millers' complaint did not trigger the insured's duty of notice, this court must conclude the appellant was required to give notice of the Millers' suit as soon as it became evident that the insurer had an interest in the litigation. The insurance company then would have had the opportunity to seek a continuance or at least participate in the trial. We hold that notice was not given "as soon as practicable" when American States was not informed of its potential exposure until after the trial of the Gerrard Realty liability issue.

As a result of the appellant's belated notice, the respondent was denied an opportunity to investigate, defend or settle the Millers' claim. Thus, we agree with the trial court that as a matter of law the respondent was prejudiced by not receiving notice of the Millers' action until after the completion of the trial against the Goldsmiths, Rogness and the appellant and thus coverage was properly denied.

Even though the respective counsel did not directly raise the issue of the applicability of sec. 631.81, Stats., dealing with the question of the proof of prejudice resulting from an insured's failure to give timely notice, the court takes this opportunity to discuss the statute in relation to the present fact situation. Prior to the time this action was decided by the lower court on January 31, 1977, the legislature enacted ch. 375, Laws of 1975, ef-

fective June 22, 1976, changing the requirements dealing with proof of prejudice as a result of an insured's failure to give timely notice.[3] Sec. 631.81, Stats., pertains to all types of insurance coverage and recites the following:

"631.81. **Notice and proof of loss.** (1) TIMELINESS OF NOTICE. Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit."

We interpret sec. 631.81, Stats., as providing that an insured's notice is not deemed untimely and precluding recovery against the policy if the notice is furnished as soon as reasonably possible within one year of the time notice is required by the terms of the insurance policy, and the insurer is unable to prove prejudice or that it was possible to give notice within the time limit required in the policy. However, sec. 631.81 does not address situations, as in the instant case, where notice is given more than one year after the time in which notice is required by the policy provisions. Thus, we hold that where notice is given more than one year after the time required by the policy, there is a rebuttable presumption of prejudice and the burden of proof shifts to the claim-

---

[3] In *RTE Corp. v. Maryland Cas. Co., supra* at 630–31, relying on *State Bank of Viroqua v. Capitol Indemnity, supra,* and *Kraus v. Wis. Life Ins. Co.,* 27 Wis.2d 611, 135 N.W.2d 329 (1965) the court stated that once it is established that there was a lack of timely notice, the proof of prejudice was immaterial. However, there was a different rule of law as to an untimely notice made in the context of an auto liability policy and in these cases a rebuttable presumption of prejudice arose. *See: Ehlers v. Colonial Penn. Ins. Co.,* 81 Wis.2d 64, 259 N.W.2d 718 (1977) and *Resseguie v. American Mut. Liability Ins. Co.,* 51 Wis.2d 92, 186 N.W. 236 (1971).

ant to prove that the insurer was not prejudiced by the untimely notice.

Prior to the enactment of sec. 631.81, Stats., a rebuttable presumption of prejudice was created when an untimely notice of claim for coverage was filed against an auto liability policy, pursuant to sec. 204.34(3). We believe this rule of law enacted in prior decisions interpreting sec. 204.34(3) establishes a reasonable policy for the interpretation of sec. 631.81 as it applies to liability coverage in general. A rebuttable presumption of prejudice, arising when a notice of claim or suit is filed over one year late, recognizes the rights of the insured and the intervening rights of the injured third party. Further, the rule guarantees and protects the insurer's contractual right to require timely notice so investigations can be commenced when witnesses are available and their memories are fresh. In the instant case, the untimely insurance claimant must prove the lack of prejudice by direct and conclusive evidence. We hold the appellant has failed to overcome the presumption of prejudice created by giving notice to the respondent twenty-two months after the Millers had commenced suit against the appellant and thus coverage was properly denied.

*By the Court.*—Judgment affirmed.

DAY, J., took no part.