Edwin A. TOMLIN and Sonia Tomlin,
Plaintiffs-Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE LIABILITY INSURANCE COMPANY, a foreign corporation, Defendant-Respondent,

and

Gregory James Glessner, James R. Glessner and Lois Glessner, Defendants.

Supreme Court

*No. 77–357. Submitted on briefs March 5, 1980.—
Decided April 1, 1980.*
(Also reported in 290 N.W.2d 285.)

216

For the appellants the cause was submitted on the briefs of *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* of Janesville.

For the respondent the cause was submitted on the brief of *Kenneth W. Forbeck* and *O'Neal, Noll, Elliott, Donovan, Lussow & Forbeck, S.C.,* of Beloit.

CONNOR T. HANSEN, J. This case involves the question of whether Tomlin's injuries were "caused by

accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned motor vehicle," as provided by the terms of an automobile liability insurance policy issued by State Farm.

The significant facts are undisputed and tragic. The pleadings, affidavits and depositions filed in the summary judgment proceedings reflect the following facts.

Gregory Glessner, a minor, was operating an automobile owned by his father and insured by State Farm. Tomlin, a Wisconsin State Patrol Officer, was patrolling a state highway and, in so doing, observed the Glessner vehicle following the preceding vehicle too closely, and the driver kept flashing the headlights on and off. Tomlin stopped the Glessner automobile, and upon approaching the car he observed several persons in the car who acted as though they were hiding something under the seats. Tomlin ascertained that Gregory Glessner was the operator of the vehicle and requested the occupants to get out of the car. Tomlin and Glessner then approached the right side of the vehicle, and Tomlin observed beer cans lying on the floor by the right front passenger's seat. Tomlin picked several full beer cans and a portion of a beer carton off the floor and then reached over to check under the driver's seat. He felt a bottle and was starting to remove it when he was stabbed seven times with a hunting knife wielded by Gregory Glessner.

Gregory Glessner was subsequently charged with attempted murder and upon trial was convicted of the lesser included offense of endangering safety by conduct regardless of life, contrary to sec. 941.30, Stats.

The policy of liability insurance issued by State Farm provided as follows under Section I—Liability and Medical Payments:

"To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

(A) *bodily injury* sustained by other *persons,* and
(B) *property damage,*

caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the *owned motor vehicle; . . . .*"

On this record State Farm moved for summary judgment. The affidavit in support of the motion stated, among other things, that at the time of the alleged actions of Gregory Glessner, the automobile involved was not being used, maintained, loaded or unloaded; that the alleged injuries and damages to the plaintiffs were not "caused by accident" as required by the terms of the contract of insurance; and that Gregory Glessner was convicted of the crime of injury by conduct regardless of life contrary to sec. 941.30, Stats.

The trial court granted the motion of State Farm for summary judgment and dismissed the complaint. In so doing, the trial court held that the insurance policy issued by State Farm did not cover the incident in question, because it was not an accident under the terms of the policy and the damages sustained by Tomlin did not arise out of the loading or unloading of the insured vehicle.

We believe the decision of the trial court to grant the motion for summary judgment was correct.

Sec. 802.08(2), Stats., provides that summary judgment shall be granted where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. This court has stated that summary judgment may be granted where there is no factual dispute or where no competing inferences arise from undisputed facts and the law resolving the issues is clear. *Hortman v. Becker Construction Co., Inc.,* 92 Wis.2d 210, 284 N.W.2d 621 (1979) ; *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 144, 271 N.W.2d 653 (1978). If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or if the application of

the controlling law to the facts is uncertain, summary judgment should not be granted. *Lawver v. Boling,* 71 Wis.2d 408, 413, 414, 238 N.W.2d 514 (1976).

The issues considered by the trial court and raised on appeal are: (1) whether the injuries sustained by the plaintiff were "caused by accident" within the meaning of the automobile liability insurance policy; and (2) whether the injuries sustained by the plaintiff arose out of the "ownership, maintenance or use, including loading or unloading," of the insured automobile.

While we affirm the judgment of the trial court, we do so upon somewhat different grounds. Also, initially, we point out that this case does not involve an alleged tortious act of the named insured or a claim for damages based upon an automobile liability insurance policy issued under the *Financial Responsibility* provisions of ch. 344, Stats.

I.

■

In determining whether an injury is "caused by accident" or "accidentally sustained" within the coverage afforded by a liability insurance policy, the courts have been primarily concerned with the question of whether the occurrence is to be viewed from the standpoint of the injured person or the insured. The majority of courts, including this court, when considering the question, have held or recognized that the determination of whether injuries resulting from an assault were caused by "accident" or "accidentally sustained" must be made from the standpoint of the injured party, rather than from that of the person committing the assault. [1]

---

[1] *See: Annotation, Liability insurance: assault as an "accident," or injuries therefrom as "accidentally" sustained, within coverage clause,* 72 A.L.R.3d 1090 (1976). 12 *Couch on Insurance* 2d, sec. 45:38, pp. 133, 134.

In *Fox Wisconsin Corp. v. Century Ind. Co.*, 219 Wis. 549, 263 N.W. 567 (1935), a theater patron was being questioned about his ticket when a theater employee committed an assault and battery upon him. The public liability policy issued by the defendant insurance company to the theater agreed to indemnify the theater for liability imposed by law for damages because of bodily injuries "accidentally sustained" by any persons. This court reversed the lower court's order dismissing the action against the insurer and held:

". . . Whether or not an injury is accidental under the terms used in the policy here involved is to be determined from the standpoint of the person injured. . . ." *Id.* at 551.

The court went on to explain:

". . . The facts show that the injury to the patron came to him through force not of his own provocation. From his standpoint, then, the injuries were 'accidentally sustained.' . . . In the absence of some provision in the policy which excludes liability for such injuries, the meaning of 'accidentally sustained' becomes plain and controlling. Damage having resulted because of bodily injury sustained by a patron of the theatre because of the care, maintenance, or use of the theatre, it becomes a liability of the insurer under its contract. The patron, whose injury gave rise to the liability, was assaulted, and, in a sense, the act was unlawful and intentional; still, considered objectively, it occurred without the agency of the patron, and, so far as these particular parties are concerned, the act may be, and legally is to be, termed accidental. . . ." *Id.* at 551.

The same conclusion was reached in *Wisconsin Transp. Co. v. Great Lakes Cas. Co.*, 241 Wis. 523, 6 N.W.2d 708 (1942), where a passenger in a speedboat was injured when he was struck by a bottle thrown from another boat by an employee of the plaintiff transportation company in order to attract the attention of the occupants of the

speedboat. The public liability policy provided coverage to the transportation company for liability imposed by law for injuries "accidentally suffered."

The rule stated in *Fox Wisconsin Corp. v. Century Ind. Co., supra,* that the question of whether an injury is accidental under the terms used in the policy is to be determined from the standpoint of the person injured, is derived from *Button v. American Mutual Accident Ass'n.,* 92 Wis. 83, 65 N.W. 861 (1896). That was a case involving accident insurance where this court stated,

"It seems quite well settled that an injury intentionally inflicted on the insured person by another is an 'accidental injury,' when such injury is unintentional on the part of the insured . . . Unless, therefore, there is some provision of the policy which excludes liability for such injuries here, the plaintiff must recover. . . ." *Id.* at 85.

The trial court distinguished *Fox Wisconsin Corp. v. Century Ind. Co., supra,* and *Wisconsin Transp. Co. v. Great Lakes Cas. Co., supra,* from the instant case because of the fact that those cases involved public liability policies while the present case concerns an automobile liability policy. However, we do not deem such a distinction to be significant. The rule stated in those two cases that the determination of whether an assault constitutes an "accident" is to be made from the standpoint of the injured person is also applicable in cases involving automobile liability insurance policies. 12 *Couch on Insurance* 2d, sec. 45:38, pp. 133, 134.[2]

We conceive of no meritorious argument to support the proposition that an intentional injury or assault is accidental because it should be viewed from the stand-

---

[2] *See: State Farm Mutual Automobile Ins. Co. v. Coon,* 46 Mich. App. 503, 208 N.W.2d 532 (1973); *Jernigan v. Allstate Insurance Company,* 269 F.2d 353 (5th Cir. 1959); *Huntington Cab Co. v. American Fidelity & Casualty Co.,* 155 F.2d 117 (4th Cir. 1946), all of which involved injuries resulting from the insured's intentional or deliberate acts.

point of the injured person in accident and public liability insurance policies, and that a different rule should prevail when considering automobile liability policies of insurance.

From the standpoint of Edwin Tomlin, the events giving rise to his injuries were neither expected nor anticipated by him, and his injuries were therefore "caused by accident" within the meaning of the policy issued by State Farm.

The trial court correctly stated that the general rule that the determination of whether injuries are accidental is to be made from the viewpoint of the injured person is not applicable where the injured party was the aggressor or in some way provoked the insured into inflicting the injuries. This exception to the rule was recognized in *Fox Wisconsin Corp. v. Century Ind. Co., supra,* at 551. However, the trial court erred in finding, as a matter of law, that Tomlin was the aggressor because he started the chain of events leading to the particular injury involved. Tomlin was performing his duty as a police officer in stopping the Glessner automobile and proceeding to remove beer and liquor from the automobile. It cannot reasonably be inferred from these circumstances that he was the aggressor whose conduct in any way justified the stabbing assault.

The fact that Gregory Glessner was convicted of the crime of endangering safety by conduct regardless of life is not a sufficient reason for denying coverage. Intent need not be proven in order to convict a person of that offense; rather, sec. 941.30, Stats., requires conduct "evincing a depraved mind." Thus, conviction of this crime is not proof that Gregory Glessner acted intentionally. Even assuming that the criminal proceedings did establish that Glessner acted intentionally, that find-

ing would not necessarily be controlling, since the infliction of the injuries is to be viewed from the standpoint of the injured party, not the injuring party.

We further observe that the liability policy issued by State Farm in the instant case contained no purported exclusion for liability resulting from an assault and battery or intentional acts of the insured. Therefore, we express no opinion as to the ultimate effect of any such exclusionary provision.

## II.

The second ground on which State Farm moved for summary judgment was that the alleged injuries sustained by the plaintiff were not injuries "arising out of the ownership, maintenance or use, including loading or unloading," of the insured automobile.

It is not argued that the liability arose out of the ownership or maintenance of the vehicle. The plaintiff argues that liability arose from the ". . . use, including loading or unloading," of the insured vehicle.

The trial court held that the liability policy did not provide coverage because, under the facts of this case, the injuries did not arise out of the unloading of the automobile. We conclude this holding of the trial court is correct. Loading or unloading of a vehicle is a specific use of a vehicle, and the words "loading or unloading" are an extension of the "use" clause of the policy. *Allstate Ins. Co. v. Truck Ins. Exchange*, 63 Wis.2d 148, 157, 158, 216 N.W.2d 205 (1974) ; *Ermis v. Federal Windows Mfg. Co.*, 7 Wis.2d 549, 553, 97 N.W.2d 485 (1959). This court has held that in order to find coverage under the "loading or unloading" clause, a person must be actively engaged in loading or unloading the automobile, and the negligent act must be a part of the loading or unloading

activity. *Amery Motor Co. v. Corey,* 46 Wis.2d 291, 297, 298, 174 N.W.2d 540 (1970). This rule was reiterated in *Allstate Ins. Co. v. Truck Ins. Exchange, supra,* at 155. See also: *Continental National Ins. Co. v. Carriers Ins. Co.,* 55 Wis.2d 533, 537, 200 N.W.2d 584 (1972) ; *Sampson v. Laskin,* 66 Wis.2d 318, 334–336, 224 N.W.2d 594 (1975). It cannot be said that Gregory Glessner was actively engaged in unloading the automobile or that his actions were a part of the unloading activity.

The more crucial question, and the one not considered by the trial court, is whether the injuries sustained by Tomlin arose out of the "use" of the insured motor vehicle. It is our conclusion that the injuries sustained did not arise out of the "use" of the vehicle as reasonably contemplated by the "arising out of the . . . use . . ." clause in an automobile liability insurance policy.

The phrase "arising out of . . . use" was interpreted and discussed at length in *Lawver v. Boling, supra,* where this court stated,

". . . As used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided.

". . . The causal connection required to be established between the use of the automobile and the injuries is not of the type which would ordinarily be necessary to warrant a finding of 'proximate cause' or 'substantial factor' as those terms are used in imposing liability for negligent conduct.

"As it is used in the coverage clause of an automobile liability policy, the phrase 'arising out of' is not so much concerned with causation as it is with defining the risk for which coverage will be afforded. The issue is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within

the risk for which the parties to the contract reasonably contemplated there would be coverage. This question is usually resolved by determining whether the alleged 'use' is one which is reasonably consistent with the inherent nature of the vehicle. That the activities could possibly have been carried on, and the accident taken place, without the use of the vehicle is irrelevant.

"Likewise, once the general activities which involve the vehicle can be said to constitute a covered 'use' of that vehicle, it makes no difference, for coverage purposes, whether the negligent act for which liability attaches occurs in the actual operation of the vehicle or in some other aspect of that 'use.' " (Footnotes omitted.) *Lawver v. Boling, supra,* at 415, 416.

Glessner's act of stabbing Tomlin seven times while Tomlin was removing beer cans from the automobile is simply not the type of use reasonably contemplated by the parties to the insurance contract and is not consistent with the inherent use of an automobile.[3] "Use" as contemplated by an automobile liability policy means the use of a vehicle as such and does not include a use which is completely foreign to a vehicle's inherent purpose.

The words "arising out of the use" are very broad, general and comprehensive terms, and we believe they should generally be accorded a reasonably liberal construction. However, this does not mean that the "arising out of use" clause is not without limitation. We believe the accident producing the injury must have some causal relationship to the inherent use of the vehicle. On the facts of this case the accident is not one arising out of the use of an automobile. We conclude the judgment of the trial court should be affirmed.

*By the Court.*—Judgment affirmed.

---

[3] *See: Annotation, Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle,* 89 A.L.R.2d 150 (1963).