Thomas M. KEMP, Plaintiff-Respondent,

v.

Dennis FELTZ and James Hudspeth, Defendants-Respondents,

AMERICAN FAMILY INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 92-2113. Submitted on briefs January 19, 1993.—Decided February 2, 1993.*

(Also reported in 497 N.W.2d 751.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Keith Johnston* and *Robert Bull* of *Ruder, Ware & Michler, S.C.,* Wausau.

For the plaintiff-respondent the cause was submitted on the brief of *Carl Ricciardi* and *Virginia Antoine* of *Habush, Habush & Davis, S.C.,* Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. American Family Insurance Company appeals the trial court's order denying its motion for summary judgment.[1] American Family contends the trial court erred by concluding that injuries caused by illegally shooting a firearm from the cab of an insured moving vehicle are injuries arising out of the use of the vehicle and thus are covered under American Family's insurance policy. American Family argues that injuries resulting from shooting a firearm out of the cab of a moving vehicle are not covered under its policy because (1) hunting from a moving vehicle is an illegal activity that is inconsistent with a vehicle's inherent purpose and (2) the injury lacked the requisite causal relationship to the vehicle's inherent use. Because we conclude that the use of the truck as a mobile hunting vehicle is consistent with the truck's inherent purpose regardless of the activity's illegality and the relationship between the injuries and the use of the truck as a mobile hunting vehicle was sufficient to establish coverage, the order is affirmed.

American Family, Thomas Kemp and Dennis Feltz stipulated to the following facts: In November 1990, during gun deer hunting season, Feltz and James Hudspeth were hunting deer in a field when they spotted several deer and fired at them. Feltz and Hudspeth then got into a pickup truck to pursue the deer, with Hudspeth driving. The truck was insured under an American Family automobile insurance policy. While Hudspeth was driving on a state highway, both he and Feltz fired shots at the deer running in the field along the highway.

Meanwhile, Kemp was hunting in the field along the highway and was injured when he was struck by one of the bullets Feltz or Hudspeth fired from the moving

---

[1] This court granted leave to appeal the trial court's nonfinal order on September 22, 1992.

truck. Although Kemp was wearing blaze orange, neither Feltz nor Hudspeth saw him in the field.

The parties (except Hudspeth) also stipulated to Feltz' and Hudspeth's negligence in firing their weapons from the cab of the moving truck. American Family then moved the trial court for summary judgment denying coverage of Kemp's injuries. The court denied the motion on the merits, based on its conclusion that Feltz and Hudspeth were using the truck for transportation, its intended and inherent purpose. The court also reasoned that although hunting from a moving vehicle is illegal, coverage may not be excluded on that basis alone.

Because the facts are stipulated and we are construing the written terms of an insurance contract, the issues presented are questions of law that we review independently of the trial court's conclusions. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis. 2d 450, 455-56, 468 N.W.2d 432, 434 (1991). Whether certain conduct falls within the coverage granted by an insurance policy is an issue governed by the insurance contract's terms and conditions. *Paape v. Northern Assur. Co.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987).

The policy in question provides that American Family will "pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer**." The term "car" as defined in the policy includes the pickup truck. It is undisputed that Kemp's injuries are covered under the policy if they arose out of the use of the pickup truck. Therefore we must determine whether the shooting of a firearm from a moving vehicle's cab constitutes a covered "use" of the vehicle

410

within the meaning of the American Family policy. Our supreme court has stated that, for coverage to apply, the "use" must be consistent with the vehicle's inherent purpose and the injury must have a causal connection to that use. *Thompson*, 161 Wis. 2d at 462, 468 N.W.2d at 437.

Because American Family's coverage of injuries "due to the use" of the insured vehicle is the same as policies providing coverage of injuries "arising out of . . . [the] use" of an insured vehicle, *Tasker v. Larson*, 149 Wis. 2d 756, 759, 439 N.W.2d 159, 160 (Ct. App. 1989), cases interpreting coverage under those policies are instructive. Our supreme court ruled that "[t]he words 'arising out of the use' are very broad, general and comprehensive terms" that should be broadly construed in favor of coverage. *Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.*, 95 Wis. 2d 215, 225, 290 N.W.2d 285, 290–91 (1980). However, the interpretation of such a clause is not unlimited. *Id.* at 225, 290 N.W.2d at 291.

American Family argues that Kemp's injuries did not arise out of the use of the pickup truck because shooting firearms out of a moving truck is an illegal activity that is foreign to the truck's inherent purpose. We do not agree. We acknowledge that hunting from a moving vehicle is illegal under sec. 167.31(2)(c), Stats. However, an insurance company is statutorily prohibited from excluding coverage in its policy for "[a]ny use of the [insured] motor vehicle for unlawful purposes . . . or while the driver is under the influence of intoxicating liquors or narcotics or any use of the motor vehicle in a reckless manner." Section 632.32(6)(b)4, Stats.

Thus, insurance companies may not exclude coverage for injuries arising from accidents involving drunk

411

driving or speeding, both of which are illegal acts. Furthermore, our supreme court held in *Allstate Ins. Co. v. Truck Ins. Exchange*, 63 Wis. 2d 148, 157–58, 216 N.W.2d 205, 210 (1974), held that a death resulting from the accidental discharge of a weapon as a passenger removed the weapon from a van "arose out of the use" of the van to transport and unload weapons. Transporting loaded firearms in a vehicle is an illegal activity under sec. 167.31(2)(b), Stats. Therefore, consistent with *Allstate* and sec. 632.32(6)(b)4, Stats., we conclude that the illegality of the activity is not determinative of the question whether it is consistent with the vehicle's "use."

Our supreme court held that the use of a truck for a hunting trip is reasonably consistent with the truck's inherent use. *Thompson*, 161 Wis. 2d at 457–58, 468 N.W.2d at 435. In fact, the *Thompson* court ruled not only that using a truck for transportation of hunters and for loading and removing weapons constitutes "use" of the truck, but also that a disabled person hunting from the bed of the truck is using the truck in a manner "consistent with [the] inherent nature of the truck as a hunting vehicle." *Id.* at 459, 468 N.W.2d at 435. We conclude that using the truck as a mobile hunting vehicle is likewise consistent with the truck's inherent purpose.

American Family attaches great significance to the supreme court's modification of the issue certified to it by the court of appeals in *Thompson*. We stated the issue as, "[d]oes the accidental shooting of a passing motorist by a deer hunter seated on the bed of his pickup truck 'arise out of' the 'use' of the truck?" The supreme court modified the certified question to "[d]oes the accidental shooting of a passing motorist by a *disabled* deer hunter sitting in the bed of his pickup truck *and possessing a permit under sec. 29.09, Stats., (1987-88) authorizing him to 'shoot or hunt from a stationary vehicle,'* 'arise

out of' the 'use' of the truck?" *Id.* at 452, 468 N.W.2d at 432–33 (emphasis in original; footnote omitted). American Family argues that the modification of the certified issue evinces the supreme court's intent to limit its holding to a hunter who was statutorily authorized to use his truck as a shooting platform. American Family reasons that because here the conduct was illegal it falls outside the *Thompson* holding and is not covered by the insurance policy.

While we agree that *Thompson* does not address the issue of the illegal use of a motor vehicle for hunting, we cannot agree that *Thompson* compels a different result in this case. The supreme court's modification of the certified issue evinces only the court's desire to limit the issue to the specific facts before it rather than addressing the broader issue that was originally certified. The unwillingness to address the broader issue does not conclusively indicate how the court would have answered the broader issue. *Thompson* provides no authority for the conclusion that illegal hunting from a moving vehicle is inherently foreign to the vehicle's purpose and thus excluded from coverage under the policy.

There are a number of other Wisconsin cases that deal with the interpretation of the phrase "arising out of the use of the vehicle." In *Allstate*, the driver of a van was killed when a hunting weapon discharged as a passenger removed it from the van. The court concluded that using a van to transport weapons to a hunting site is consistent with its inherent use and unloading the weapons is normally incident to such use. *Id.* at 158, 216 N.W.2d at 210.

Likewise, our supreme court in *Lawver v. Boling*, 71 Wis. 2d 408, 415–16, 238 N.W.2d 514, 518 (1976), held that injuries sustained in a fall from a rope and pulley system attached to and pulled by a pickup truck arose

out of the use of the truck. In *Tasker*, 149 Wis. 2d at 761, 439 N.W.2d at 161, we held that the use of a vehicle for the temporary placement of children is "reasonably consistent" with the inherent nature of the vehicle even though at that time it was not being used as a mode of transportation. We concluded that injuries sustained by a child who had been nudged or stepped out of the vehicle were covered under the insurance policy because the injuries were due to the use of the insured vehicle.

Here, the injury arose out of the use of the insured vehicle to transport the hunters as a means of enhancing their pursuit of the deer as the hunters continued to shoot at the deer. At the time of the incident the vehicle was being used for its intended and customary purpose—as a means of transportation. This fact compels the conclusion that using a truck as a mobile hunting vehicle is consistent with the truck's inherent use. Here, as in *Thompson*, the truck was being used as a hunting vehicle.

Our conclusion that using a truck as a mobile hunting vehicle is consistent with the truck's inherent use as a hunting vehicle does not, however, end our inquiry. Our supreme court has stated that, for coverage to apply, "[t]he injury must also have a causal connection to the inherent use of the vehicle." *Thompson*, 161 Wis. 2d at 462, 468 N.W.2d at 437. However, the required causal connection need not even be a substantial factor as thst term is used in negligent conduct cases. *Id.* at 457, 468 N.W.2d at 434. The question concerns not so much the cause of the injuries but the definition of the contemplated risks that are covered by the policy. *Id.* at 457, 468

N.W.2d at 435.[2] It is therefore necessary to examine the relationship between the use of the vehicle and the injuries that were sustained to determine whether Kemp's injuries were due to the use of the truck.

American Family argues that there is no causal connection between Kemp's injuries and the use of the truck because his injuries "are solely attributable to the fact that he was shot with a bullet fired from a gun [and his] injuries would have been identical whether the hunters were on foot, in a stationary vehicle or a moving vehicle." However, it is irrelevant that the accident could have occurred without the use of the insured vehicle. *Lawver,* 71 Wis. 2d at 416, 238 N.W.2d at 518. Our supreme court ruled that the existence of a causal connection between the use of a vehicle and an injury does not require that the vehicle caused the injury:

> For example, in *Allstate,* the hunting van did not "cause" the van driver's death. The accidental discharge of a rifle, when it was removed from the van, was the "cause" of the shooting and death of the van driver. In *Tasker,* the truck the child was left in while the driver was on an errand certainly did not "cause" the child's death. To the contrary, the child was either nudged or stepped out of the truck onto the highway where he was struck by an oncoming vehicle.
> Similarly, in the case before the court, [the] truck certainly did not "cause" Lester Thompson's

[2] The record contains no evidence nor argument concerning the risks American Family contemplated when it issued the insurance policy and, therefore, we do not address it. Nor was the argument of the principle of fortuity, the insured's reasonable expectation, advanced and for that reason we do not address that issue.

death. [The hunter's] negligence in shooting his rifle in the direction of the highway on which Lester Thompson was driving was a "cause" of Lester Thompson's death. But the connection between [the] "use" of the bed of [the] truck to shoot, and his negligence in shooting his rifle, the accident which "caused" Lester Thompson's death, is a sufficient "causal connection" for coverage under the terms of the policy.

*Thompson*, 161 Wis. 2d at 462–63, 468 N.W.2d at 437 (footnote and citations omitted).

In answering the question whether the truck's use as a mobile hunting vehicle is sufficiently connected to Kemp's injuries, it is instructive to examine the cases where the requisite relationship was found lacking. In *Snouffer v. Williams*, 106 Wis. 2d 225, 227, 316 N.W.2d 141, 142 (Ct. App. 1982), the plaintiff and several friends rode in a truck to Williams' house. The plaintiff remained in the truck on the passenger side while two friends got out and vandalized Williams' property. Just as the vandals were getting back into the truck, Williams came out of the house and fired a pistol at the truck, injuring the plaintiff. While the plaintiff was in the truck that was intended to be used to transport the vandals to and from the scene, we concluded that the use of the truck was not causally connected to the injury because it was the vandals' acts, which were independent of the truck's use, that caused the plaintiff's injuries. Similarly, stabbing a police officer while he is removing beer cans from the back seat of a vehicle was held not only inconsistent with the inherent use of the vehicle, but also not causally connected to the use of the vehicle. *Tomlin*, 95 Wis. 2d at 225, 290 N.W.2d at 290. The stabbing, like the acts of vandalism, was wholly independent of any use of the vehicle.

██

Here, however, the act of shooting firearms out of the truck is not wholly independent of the truck's use to transport the hunters closer to the deer they were chasing. In fact, the firing of the weapons from the moving truck was directly related to its use as a mode of transportation. American Family's argument that Kemp's injuries were not enhanced or aggravated by the use of the truck as a moving hunting vehicle is meritless. Not only were the weapons fired from the vehicle, but the fact that the vehicle was moving increases the probability of an errant shot. We therefore conclude that there is a direct and immediate relationship between the use of the motor vehicle and the injuries sustained by the plaintiff.

We conclude that because the vehicle in question was being used for the purpose of transporting persons from one place to another and there is a sufficient connection between the shooting of firearms from the vehicle and Kemp's injuries, this conduct is within the provisions of the policy granting coverage to the damages sustained "due to the use of a car." The illegal nature of this conduct is an insufficient basis to exclude coverage. We therefore conclude that the trial court correctly concluded that American Family's policy covered Kemp's injuries.

*By the Court.*—Order affirmed.