Shanna Marie VAN DYN HOVEN, deceased, by her Special Administrator, Steven Van Dyn Hoven, and Nancy Van Dyn Hoven, Plaintiffs-Appellants,†

v.

PEKIN INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 02–0722. Submitted on briefs August 27, 2002.—Decided September 17, 2002.*

2002 WI App 256

(Also reported in 653 N.W.2d 320.)

† Petition to review withdrawn 11-15-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *C.M. Bye* and *Tracy N. Tool* of *Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael P. Konz* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Steven and Nancy Van Dyn Hoven appeal from a judgment and an order denying their motion for declaration of uninsured motorist coverage and dismissing their action. Their claim arose

out of the murder of the Van Dyn Hovens' daughter, Shanna, by Kenneth Hudson when Hudson encountered Shanna as he was driving his truck. We conclude that the murder did not result from the "use" of Hudson's vehicle, as that term is used in the insurance policy. Therefore, we affirm the order and judgment.

## FACTS

¶ 2. In the early evening of June 25, 2000, Shanna Van Dyn Hoven was jogging in Kaukauna. Hudson approached her in a truck, pushed her into the truck, stabbed her with a hunting knife and fled in the truck. Shanna was found dead at the scene.

¶ 3. Shanna was insured under her parents' automobile policy, issued by Pekin Insurance Company. The Pekin policy provided uninsured motorist coverage. The Van Dyn Hovens filed this action for damages against Pekin because they believed that Hudson was uninsured, and because they claimed the injuries arose from Hudson's use of a motor vehicle. They then filed a motion to declare uninsured motorist coverage.

¶ 4. The circuit court denied the motion, first noting that the Van Dyn Hovens did not sufficiently demonstrate that Hudson was uninsured. The court further held that because there was no causal connection between Shanna's injuries and Hudson's use of his truck, the injuries did not arise from the "use" of the truck. As a result, the court denied the Van Dyn Hovens' motion and entered a judgment in favor of Pekin dismissing the claim.

## ISSUES

¶ 5. The Van Dyn Hovens appeal, presenting three arguments: (1) Shanna's death arose from the "use" of a vehicle; (2) the murder was an "accident"

under the policy; and (3) they established that Hudson was uninsured. We conclude that Shanna's death did not arise from the use of a vehicle, so uninsured motorist coverage does not apply. As a result, we do not address the other issues.

## STANDARD OF REVIEW

██

¶ 6.   This appeal involves the interpretation of an insurance policy and therefore presents a question of law that we review independently. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990).

## ANALYSIS

¶ 7.   The applicable portion of the Pekin uninsured motorists coverage states:

> A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
>
> 1. Sustained by an "insured;" and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

The Van Dyn Hovens argue that their damages arose directly from Hudson's use of the vehicle and are therefore covered by the Pekin policy.

██

¶ 8.   While the term "use" is broad and should be given a liberal construction, it is not without limitation. *Tomlin v. State Farm Mut. Auto. Ins. Co.*, 95 Wis. 2d

215, 225, 290 N.W.2d 285 (1980). " 'Use' as contemplated by an automobile liability policy means the use of a vehicle as such and does not include a use which is completely foreign to a vehicle's inherent purpose." *Id.*

¶ 9. In *Tomlin*, a police officer pulled over a car for erratic driving. When he approached the vehicle and reached inside to check for alcohol under the driver's seat, he was stabbed by the driver. *Id.* at 217. The supreme court held that the driver's act of stabbing the officer was not consistent with the inherent use of an automobile and was not the type of use reasonably contemplated by the parties to an insurance contract. *Id.* at 224–25.

■

¶ 10. Although *Tomlin* involved an automobile liability policy, we see no reason why its definition of "use" does not apply to uninsured motorist coverage as well.[1] Here, Hudson stabbed Shanna in his truck. As in *Tomlin*, Hudson's acts do not constitute "use" sufficient to trigger insurance coverage because such a use is not consistent with the inherent use of the vehicle.

¶ 11. The Van Dyn Hovens claim that an action tangentially related to transportation can still be related to the use of a vehicle. They cite *Kemp v. Feltz*, 174 Wis. 2d 406, 411–15, 497 N.W.2d 751 (Ct. App. 1993), where we held that illegally shooting at deer from a moving vehicle constitutes use of the vehicle for insurance purposes. However, we also noted in *Kemp* that using the truck as a mobile hunting vehicle is consistent

---

[1] The Van Dyn Hovens simply assert that *Tomlin v. State Farm Mut. Auto. Ins. Co.*, 95 Wis. 2d 215, 290 N.W.2d 285 (1980), is inapplicable because that case dealt with third-party insurance and this deals with uninsured motorist coverage. However, they give no specific reasons why this distinction is material.

with the inherent use of a truck for transportation of hunters and the loading and removing of weapons. *Id.* at 412–14. Hudson's use of the vehicle in Shanna's death was not related to transportation and, therefore, was a use foreign to the truck's inherent use.[2]

¶ 12.　In order for uninsured motorist coverage to apply, the damages must arise out of the use of the uninsured motor vehicle. Hudson's actions were not consistent with the inherent use of a vehicle. As a result, there is no coverage under the uninsured motorist policy.

*By the Court.*–Judgment and order affirmed.

---

[2] Other jurisdictions have made similar rulings on this issue. The circuit court cited *Currera v. Loyd*, 531 So. 2d 544, 546 (La. 1988), where a girl was kidnapped, raped and murdered by a man "using" a pickup truck. The court held that kidnapping, rape and murder do not flow from the use of a vehicle and are not reasonable and natural consequences of the use of a vehicle. Similarly, the Virginia Supreme Court held in *Travelers Ins. Co. v. LaClair*, 463 S.E.2d 461, 463 (Va. 1995), that there is no "use" when a person is not utilizing a "vehicle as a vehicle." (Citation omitted.) The court noted that the word "use" does not contemplate utilization "as an outpost from which an assailant may inflict intentional injury . . . ." *Id.* at 464.

The Van Dyn Hovens cite *Nationwide Mut. Ins. Co. v. Smelser*, 563 S.E.2d 760 (Va. 2002), which distinguishes *LaClair*. In *Smelser*, the victim, a pedestrian, was injured when a car passenger snatched her purse. The court concluded that the "force from the vehicle's movement directly contributed to her injuries." *Id.* at 763. We believe that distinction is inapplicable here because Shanna's injuries were not caused by the "force from the vehicle's movement."