**2021 WI App 66**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2020AP1745

†Petition for Review Filed

Complete Title of Case:

**1ST AUTO & CASUALTY INSURANCE COMPANY,**

  **PLAINTIFF-RESPONDENT,**

 **V.**

**R. P., J. P. AND A. P., A MINOR,**

  **†DEFENDANTS-THIRD-PARTY PLAINTIFFS-APPELLANTS,**

 **V.**

**CODY TRIEBS,**

  **THIRD-PARTY DEFENDANT,**

**PROGRESSIVE UNIVERSAL INSURANCE COMPANY,**

  **THIRD-PARTY DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | August 18, 2021 |
| Submitted on Briefs: | April 13, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Tracy N. Tool*, *Martha H. Heidt*, and *Cristina M. Wirth* of *Bye, Goff & Rhode, Ltd*., River Falls.

Respondent
ATTORNEYS:      On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Patrick G. Heany* of *Thrasher, Pelish & Heaney, Ltd.*, Rice Lake.

     On behalf of third-party defendant-respondent, the cause was submitted on the brief of *Anthony P. Hahn* of *Devine Hahn, S.C.*, Racine.

**2021 WI App 66**

COURT OF APPEALS
DECISION
DATED AND FILED

August 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1745**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV353**

IN COURT OF APPEALS

1ST AUTO & CASUALTY INSURANCE COMPANY,

 PLAINTIFF-RESPONDENT,

 V.

A. P., A MINOR, R. P. AND J. P.,

 DEFENDANTS-THIRD-PARTY
 PLAINTIFFS-APPELLANTS,

 V.

CODY TRIEBS,

 THIRD-PARTY DEFENDANT,

PROGRESSIVE UNIVERSAL INSURANCE COMPANY,

 THIRD-PARTY DEFENDANT-RESPONDENT.

   APPEAL from judgments of the circuit court for Eau Claire County: EMILY M. LONG, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

¶1 STARK, P.J.   Amy[1] was sexually assaulted by Cody Triebs inside the cab of Triebs' pickup truck and on the truck's tailgate.  At issue in this appeal is whether insurance policies issued by 1st Auto & Casualty Insurance Company and Progressive Universal Insurance Company provide uninsured motorist (UM) coverage for Amy's injuries.  The circuit court granted summary judgment to 1st Auto and Progressive, concluding their respective policies do not provide UM coverage because Amy's injuries from the sexual assault did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle.  We agree and affirm.

## BACKGROUND

¶2 Triebs, a friend of Amy's family, was staying with her family during deer hunting season in November 2016.  While there, he slept in a shed on the family's property.  Amy was thirteen or fourteen years old at the time, and Triebs was twenty or twenty-one.

¶3 According to Amy, one night she went out to the shed intending to clean it for her father.  Triebs was in the shed, and Amy talked to him about hunting for approximately one hour.  Triebs then asked if Amy wanted to go and get a soda, and she agreed, believing they would drive to a nearby gas station.

¶4 Instead of going to a gas station, however, Amy testified that Triebs drove his pickup truck to a secluded parking lot.  After putting his truck in park, and while they were still inside the truck's cab, Triebs grabbed and kissed Amy, who

---

[1] For ease of reading, we refer to defendant-third-party-plaintiff-appellant A.P. using the pseudonym "Amy," rather than her initials.

said "no" and tried to push him away. Triebs ignored her and began to sexually assault her. Triebs then dragged Amy to the tailgate of the truck, where he continued to sexually assault her. Afterwards, Triebs told Amy not to tell anyone, and they drove to a gas station before returning to Amy's home.

¶5 During his deposition testimony, Triebs admitted having sexual contact with Amy on the night in question. According to Triebs, however, the sexual contact was initiated by Amy and began while they were driving in his truck. Triebs confirmed that after he parked the truck, he had sexual contact with Amy both in the cab and in the bed of the vehicle. Triebs testified he was aware at the time of the sexual contact that he was an adult and Amy was a minor, and that it was therefore illegal for him to have sexual contact with her.

¶6 At the time of the sexual assault, Triebs was covered by an automobile insurance policy issued by Progressive, and Amy's parents had an automobile insurance policy issued by 1st Auto. Both of those policies included UM coverage. The UM coverage insuring agreements in both policies stated that the respective insurers would pay damages that an insured was legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury that: (1) was sustained by an insured; (2) was caused by an accident; and (3) arose out of the ownership, maintenance, or use of an uninsured motor vehicle.[2]

---

[2] It is undisputed that Amy qualified as an insured under both policies at the time of the sexual assault. It is also undisputed that Triebs' pickup truck qualified as an uninsured motor vehicle under both policies. Although Triebs' pickup truck was insured under the Progressive policy, Progressive denied liability coverage for A.P.'s injuries. Both policies define an uninsured motor vehicle to include a land motor vehicle "[t]o which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company … [d]enies coverage."

¶7      1st Auto commenced this lawsuit on July 26, 2018, seeking a declaratory judgment that its policy did not provide UM coverage for Amy's injuries stemming from the November 2016 sexual assault. Amy and her parents subsequently filed a third-party complaint against Triebs seeking compensatory and punitive damages, and they later filed an amended third-party complaint adding Progressive as a third-party defendant.[3] Progressive then filed an answer, cross-claim, and counterclaim, seeking a declaration that its policy provided neither liability nor UM coverage for Amy's injuries.

¶8      Upon the parties' stipulation, the circuit court issued an order bifurcating the coverage issues and staying proceedings on the merits of Amy's third-party claim against Triebs. Both 1st Auto and Progressive then moved for summary judgment, contending that their respective policies did not provide UM coverage because Amy's injuries did not arise from the ownership, maintenance, or use of an uninsured motor vehicle. 1st Auto also argued that there was no UM coverage under its policy because Amy's injuries were not caused by an accident and because of the "fortuity principle"—i.e., the principle "that insurance covers fortuitous losses and that losses are not fortuitous if the damage is intentionally caused." In addition, Progressive argued that its policy did not provide liability coverage for Amy's injuries because the sexual assault was an intentional act and was not accidental.

¶9      The circuit court granted both insurers' summary judgment motions. With respect to UM coverage, the court concluded that Amy's injuries did not arise from the ownership, maintenance, or use of an uninsured motor vehicle, as there

---

[3] We refer to Amy and her parents, collectively, as "Amy" throughout the remainder of this opinion.

was no "reasonable argument that sexual assault is consistent with the inherent nature of the use of a vehicle." The court also concluded that the sexual assault was "an intentional act, not one of negligence or accident." The court therefore entered written judgments declaring that Progressive's policy did not provide liability coverage for Amy's injuries and that neither insurer's policy provided UM coverage. Amy now appeals, challenging only the court's determination regarding UM coverage.

## DISCUSSION

¶10     We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2019-20).[4]

¶11     Here, our review of the circuit court's summary judgment decision requires us to interpret and apply insurance policy provisions. The interpretation of policy language presents a question of law that we review independently. *Danbeck v. American Fam. Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150. "An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it." *Id.* We therefore give the words in an insurance policy their common and ordinary meaning, and where the policy language is plain and unambiguous, we enforce it as written without resort to rules of construction. *Id.* "We do not construe policy language to cover

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

5

risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845.

¶12    On appeal, Amy contends the undisputed facts show that she is entitled to UM coverage under both the Progressive and 1st Auto policies because she seeks damages for bodily injuries that were sustained by an insured, caused by an accident, and that arose out of the use of an uninsured motor vehicle.[5]    In response, both Progressive and 1st Auto argue that Amy's injuries did not arise out of the use of an uninsured motor vehicle, and 1st Auto also argues that her injuries were not caused by an accident.  We need not address whether Amy's injuries were caused by an accident, as we conclude that the circuit court properly granted both insurers summary judgment with respect to UM coverage because Amy's injuries did not arise from the use of an uninsured motor vehicle.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

¶13    Neither the Progressive policy nor the 1st Auto policy defines the term "use."  Nonetheless, that term "is commonly found in auto insurance policies and

---

[5]  As noted above, the UM coverage insuring agreements in both policies require that the bodily injury at issue arose out of the ownership, maintenance, or use of an uninsured motor vehicle. In her brief-in-chief on appeal, Amy argues that she is entitled to UM coverage because her injuries arose out of the *use* of Triebs' vehicle, without addressing ownership or maintenance.  In a footnote in her reply brief, however, Amy argues for the first time that her injuries also arose out of Triebs' *ownership* of his vehicle.  We decline to address Amy's two-sentence argument regarding ownership because it is undeveloped, unsupported by citations to legal authority, and was raised for the first time in a reply brief.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

has been defined by our case law."[6] ***Progressive N. Ins. Co. v. Jacobson***, 2011 WI App 140, ¶12, 337 Wis. 2d 533, 804 N.W.2d 838. Prior cases teach that while "use" is a broad term and is given a liberal construction, "it is not without limitation." ***Id.*** To determine whether an injury arose from the use of a vehicle, "[w]e must ascertain whether the injury-causing activity … is within the risk for which the parties reasonably contemplated coverage." ***Id.*** We do so by "asking whether the activity is reasonably consistent with the inherent nature of the vehicle." ***Id.*** "Use" in this context "means the use of a vehicle as such and does not include a use which is completely foreign to a vehicle's inherent purpose." ***Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.***, 95 Wis. 2d 215, 225, 290 N.W.2d 285 (1980).

¶14    Use of a vehicle need not involve the direct, physical operation of the vehicle, "in the sense of moving it forward, backing it up, putting it into gear, etc." ***Jacobson***, 337 Wis. 2d 533, ¶17. In addition, the insured "does not even have to be in direct contact with the vehicle to be using it." ***Id.*** The use, however, must have "some foundation in the inherent nature of the vehicle." ***Id.***, ¶18. Activities that constitute use of a vehicle "can range beyond ordinary transportation, but [they] generally involve some closely related activity." ***Id.*** Moreover, it is not enough that a vehicle was the physical situs of an injury, that the injury occurred incidentally to the use of the vehicle, or that the vehicle was used to transport the injured person

---

[6] Both Amy and 1st Auto cite Wisconsin's omnibus statute, which defines "using" to include "driving, operating, manipulating, riding in and any other use." *See* WIS. STAT. § 632.32(2)(h). The omnibus statute requires each automobile insurance policy to provide the same coverage to "any person using any motor vehicle described in the policy" as the coverage provided to the named insured, as long as the use is "for purposes and in the manner described in the policy." Sec. 632.32(3)(a). The omnibus statute does not address the definition of the term "use" in the context of policy provisions stating that coverage applies only to injuries that arose out of the use of a vehicle. We therefore agree with Progressive that the omnibus statute's definition of the term "using" for purposes of § 632.32 is not relevant to whether Amy's injuries arose out of the "use" of an uninsured motor vehicle for purposes of the UM provisions in the Progressive and 1st Auto policies.

to the place where the injury occurred. *Snouffer v. Williams*, 106 Wis. 2d 225, 229, 316 N.W.2d 141 (Ct. App. 1982). In addition, for an injury to arise out of the use of a vehicle, "the accident producing the injury must have some causal relationship to the inherent use of the vehicle." *Tomlin*, 95 Wis. 2d at 225.

¶15     Applying these principles to the instant case, we conclude that Amy's injuries did not arise out of the use of Triebs' uninsured motor vehicle. Although the precise details of the sexual assault are disputed, all parties agree that Triebs sexually assaulted Amy both inside the cab of his truck and on the truck's tailgate. We agree with Progressive and 1st Auto that sexual assault is not reasonably consistent with—and, in fact, is completely foreign to—the inherent nature of a vehicle. "Inherent" means "structural or involved in the constitution or essential character of something." *Inherent*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). The constitution or essential character of a vehicle relates to transportation. As noted above, "use" of a vehicle "generally involve[s]" activities that are "closely related" to transportation. *Jacobson*, 337 Wis. 2d 533, ¶18. Sexual assault is not closely related to a vehicle's inherent nature as a means of transportation, nor is it otherwise "involved in the constitution or essential character" of a vehicle. *See inherent*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993).

¶16     Our supreme court's decision in *Tomlin* supports this conclusion. There, a state patrol officer stopped a vehicle, and during the stop he leaned into the vehicle to retrieve beer cans from the floor and check underneath the driver's seat. *Tomlin*, 95 Wis. 2d at 217. While he was doing so, the driver stabbed him seven times with a hunting knife. *Id.* The issue on appeal was whether the officer's injuries were caused by an accident "arising out of the … use" of the driver's motor vehicle. *Id.* at 218. Our supreme court concluded the driver's act of stabbing the

officer was "simply not the type of use reasonably contemplated by the parties to the insurance contract and [was] not consistent with the inherent use of an automobile." *Id.* at 225. The court explained that the term "use" "as contemplated by an automobile liability policy means the use of a vehicle as such and does not include a use which is completely foreign to a vehicle's inherent purpose." *Id.* The court further concluded that the driver's stabbing of the officer lacked the necessary "causal relationship to the inherent use of the vehicle." *Id.*

¶17     Our decision in *Van Dyn Hoven v. Pekin Insurance Co.*, 2002 WI App 256, 258 Wis. 2d 133, 653 N.W.2d 320, is also instructive. In that case, an assailant approached a jogger while driving his truck, pushed the jogger into the truck, stabbed her with a hunting knife, and then fled in the truck. *Id.*, ¶2. The jogger was later found dead at the scene of the attack, and her parents sought UM coverage for her death under their automobile insurance policy. *Id.*, ¶¶2-3.

¶18     On appeal, we agreed with the insurer that there was no coverage because the jogger's death did not arise from the use of a vehicle. *Id.*, ¶5. We reasoned that, as in *Tomlin*, the assailant's act of stabbing the jogger inside his truck was "not consistent with the inherent use of the vehicle." *Id.*, ¶10. We stressed that the assailant's "use of the vehicle in [the jogger's] death was not related to transportation and, therefore, was a use foreign to the truck's inherent use." *Id.*, ¶11. In support of that conclusion, we cited a Louisiana case for the proposition that "kidnapping, rape and murder do not flow from the use of a vehicle and are not reasonable and natural consequences of the use of a vehicle." *Id.*, ¶11 n.2 (citing *Currera v. Loyd*, 531 So. 2d 544, 546 (La. Ct. App. 1988)). We also cited a Virginia case in which the court held that there is no "use" of a vehicle when a person is not utilizing "a vehicle as a vehicle," and that the word "use" does not "contemplate

utilization 'as an outpost from which an assailant may inflict intentional injury ….'" *Id.* (citing *Travelers Ins. Co. v. LaClair*, 463 S.E.2d 461, 463-64 (Va. 1995)).

¶19    In this case, when Triebs sexually assaulted Amy inside the cab of his pickup truck and on the truck's tailgate, he was not using the truck as a vehicle. The sexual assault was not related to the truck's inherent use as a means of transportation, and it was not a reasonable and natural consequence of that inherent use. As in *Tomlin* and *Van Dyn Hoven*, the fact that the injurious conduct occurred inside the vehicle was not sufficient to transform that conduct into a "use" of the vehicle for purposes of insurance coverage. *See also Snouffer*, 106 Wis. 2d at 229 (stating that for an injury to arise from the use of a vehicle, it is "not enough that an automobile be the physical situs of an injury" (citation omitted)). Thus, like the stabbings in *Tomlin* and *Van Dyn Hoven*, the sexual assault in this case did not constitute a use of Triebs' motor vehicle under the Progressive and 1st Auto policies.

¶20    In arguing to the contrary, Amy relies heavily on our decision in *Kemp v. Feltz*, 174 Wis. 2d 406, 497 N.W.2d 751 (Ct. App. 1993). In that case, two men who were hunting in a field spotted several deer and fired at them. *Id.* at 409. The men then got into a pickup truck to pursue the deer and fired shots at them from the moving vehicle. *Id.* One of those shots hit the plaintiff, who was hunting in a field along the highway. *Id.* at 409-10. The issue on appeal was whether the plaintiff's injuries arose from the use of the pickup truck. *Id.* at 410-11.

¶21    In our decision, we acknowledged that hunting from a moving vehicle is illegal. *Id.* at 411. We stated, however, that the illegality of a particular activity "is not determinative of the question whether [that activity] is consistent with the vehicle's 'use.'" *Id.* at 412. We then concluded that the plaintiff's injuries arose

10

out of the use of the pickup truck because the truck was being used "to transport the hunters as a means of enhancing their pursuit of the deer as the hunters continued to shoot at the deer." *Id.* at 414. We explained, "At the time of the incident the vehicle was being used for its intended and customary purpose—as a means of transportation. This fact compels the conclusion that using a truck as a mobile hunting vehicle is consistent with the truck's inherent use." *Id.*

¶22 Amy asserts *Kemp* stands for the proposition that "where the legal version of an activity is consistent with a vehicle's inherent purpose, the illegal version of such activity also qualifies as 'use' consistent with a vehicle's inherent purpose." Amy then contends that "common experience establishes that engaging in sexual activities in and on vehicles is both a rite of passage and a popular activity deeply rooted in American culture." Amy therefore asserts that legal sexual activities in a vehicle are "consistent with a vehicle's inherent purpose and insurers should reasonably expect that vehicles might be used for sexual activities." Amy thus argues that under *Kemp*, because legal sexual activities in a vehicle constitute "use" of a vehicle for purposes of insurance coverage, illegal sexual activities like the sexual assault in this case must also constitute "use" of a vehicle.

¶23 Amy's argument misses the mark by assuming that sexual activities in a vehicle are consistent with the inherent nature of a vehicle and therefore constitute "use" of a vehicle for purposes of insurance coverage. Although Amy asserts that sexual activities in vehicles are commonplace, that does not mean that such activities are consistent with a vehicle's inherent nature. Again, although "use" of a vehicle need not involve the direct physical operation of the vehicle and "can range beyond ordinary transportation," it generally involves some activity that is "closely related" to transportation. *Jacobson*, 337 Wis. 2d 533, ¶¶17-18. Thus, the act of illegally shooting at deer from a moving vehicle in *Kemp* constituted "use" of

11

that vehicle because it was consistent with the vehicle's inherent use as a means of transportation. *Kemp*, 174 Wis. 2d at 414. Here, in contrast, the sexual assault in and on Triebs' truck was not consistent with, or closely related to, the truck's inherent use as a means of transportation.

¶24 Amy next cites a number of cases in which Wisconsin courts determined that various activities constituted "use" of a vehicle, and she then argues that because "the frequency of sexual activity in and on vehicles is likely far more common than" those activities, sexual activity must also be deemed a "use" of a vehicle. This argument fails because the dispositive inquiry is not how common it is for a particular activity to occur in a vehicle, but whether that activity is reasonably consistent with the inherent nature of a vehicle. *See Jacobson*, 337 Wis. 2d 533, ¶12. In each of the cases Amy cites, the activity in question was consistent with the vehicle's inherent nature as a means of providing transportation

or fulfilling a closely related purpose.[7] As explained above, Triebs' sexual assault of Amy was not consistent with the inherent nature of his truck, as it had no relation to transportation or any other closely related activity.

¶25 Amy next asserts that the Progressive and 1st Auto policies provide UM coverage for her injuries because Triebs used his truck to transport her to and from the scene of the assault, and "Wisconsin courts have ruled that transporting a passenger is consistent with the inherent nature of a vehicle." While Amy is correct that transporting a passenger is consistent with a vehicle's inherent nature, her argument fails because her injuries did not arise out of her transportation in Triebs' truck. Rather, they arose out of the sexual assault that he committed in and on the truck. Although the truck was indisputably used to transport Amy to and from the scene of the assault, our prior cases clearly hold that an injury does not arise out of

---

[7] *See* ***Thompson v. State Farm Mut. Auto. Ins. Co.***, 161 Wis. 2d 450, 452, 458-59, 468 N.W.2d 432 (1991) (the accidental shooting of a passing motorist by a disabled hunter who was legally hunting from the bed of his pickup truck arose out of the use of the truck because "the use of the truck for a hunting trip is reasonably consistent with the inherent use of the truck"); ***Lawver v. Boling***, 71 Wis. 2d 408, 411, 416, 238 N.W.2d 514 (1976) (the use of a pickup truck to lift an individual on a chair attached to a rope in order to repair barn boards was reasonably consistent with the inherent nature of the vehicle because it is reasonable to expect that a truck in a farm setting "will be put to a variety of uses beyond the ordinary transportation of persons and goods," including use "as a power source in performing necessary farm repairs"); ***Allstate Ins. Co. v. Truck Ins. Exch.***, 63 Wis. 2d 148, 153, 159-60, 216 N.W.2d 205 (1974) (the accidental shooting of an individual when a fellow hunter's rifle discharged as he was unloading it from a van arose from the use of the van because the van "could naturally … be expected to be used for hunting trips," and the loading and unloading of the necessary hunting equipment fell within the contemplated use of the van); ***Trampf v. Prudential Prop. & Cas. Co.***, 199 Wis. 2d 380, 383, 389-90, 544 N.W.2d 596 (Ct. App. 1996) (injuries sustained when an individual was bitten by a dog that was being transported in the bed of a vehicle arose from the use of the vehicle because transporting dogs in a vehicle's bed is "consistent with a reasonably contemplated use of a vehicle"); ***Garcia v. Regent Ins. Co.***, 167 Wis. 2d 287, 291, 297-98, 481 N.W.2d 660 (Ct. App. 1992) (injuries that a child sustained after a driver signaled to her to cross the street for the purposes of getting into his vehicle arose out of the driver's use of the vehicle because the vehicle was designed to carry passengers, and "[w]ithin the reasonable ambit of such use are the necessary incidental activities of boarding and alighting and the reasonable expectation that, in certain instances, the operator may be collaterally involved in such activity"); ***Tasker v. Larson***, 149 Wis. 2d 756, 761, 439 N.W.2d 159 (Ct. App. 1989) (leaving one's child in a motor vehicle during a brief errand constitutes use of the vehicle because it is reasonably consistent with the vehicle's inherent nature).

the use of a vehicle simply because the vehicle was used to transport the injured person to the location where the injury occurred. *See Snouffer*, 106 Wis. 2d at 229.

¶26     Amy also contends that the sexual assault and her resultant injuries would not have occurred "but for the availability and use" of Triebs' truck. In support, she asserts that Triebs relied on the privacy, mobility, and control provided by the truck to sexually assault her. She also stresses that Triebs did not assault her while they were alone together in her father's shed and instead waited to do so until after he had used his truck to drive her to a secluded area. Amy's argument in this regard is speculative. In any event, even assuming Amy is correct that the assault would not have occurred absent the availability and use of Triebs' truck, the fact remains that sexual assault in or on a vehicle is not reasonably consistent with the inherent use of a vehicle for transportation or closely related activities.

¶27     Ultimately, we agree with Progressive that it would be ludicrous to conclude that the parties to an automobile insurance policy would expect that policy to provide UM coverage for injuries caused by a sexual assault committed inside of or on an uninsured motor vehicle. *See Jacobson*, 337 Wis. 2d 533, ¶12. As explained above, such conduct is not reasonably consistent with—and is, in fact, completely foreign to—the inherent use of a vehicle. Although the facts of this case are abhorrent, we will not construe an insurance policy to cover risks that the insurer did not contemplate or underwrite and for which it did not receive a premium. *See Estate of Sustache*, 311 Wis. 2d 548, ¶19. Because Amy's injuries did not arise

14

from the use of an uninsured motor vehicle, the circuit court properly granted summary judgment to Progressive and 1st Auto with respect to UM coverage.[8]

*By the Court.*—Judgments affirmed.

---

[8] Because we conclude Amy's injuries did not arise from the use of an uninsured motor vehicle, we need not address 1st Auto's alternative argument that the fortuity principle precludes UM coverage under the facts of this case. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.