SENTRY INSURANCE a mutual company,
Plaintiff-Third-Party Plaintiff-Appellant,

v.

Jay SCHRANK and Deborah Roman-Schrank,
Defendants-Respondents,†

Kevin CASTONA and ABC Insurance Company,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 2004AP639. Submitted on briefs November 8, 2004.
—Decided September 22, 2005.*

2005 WI App 235

(Also reported in 707 N.W.2d 276.)

† Petition to review denied 12-14-05.

On behalf of the plaintiff-third-party plaintiff-appellant, the cause was submitted on the briefs of *Robert F. Johnson* and *Colleen M. Fleming* of *Cook & Franke S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Russell T. Golla* of *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J.   Sentry Insurance, a mutual company, appeals a non-final order of the circuit court awarding summary judgment to Jay Schrank and Deborah Roman-Schrank in this insurance coverage dispute. Jay Schrank was injured by Kevin Castona after Schrank took Castona's truck keys away from him in an effort to prevent Castona from driving under the influence of alcohol. Schrank sought benefits under two automobile insurance policies provided by Sentry. The circuit court determined these policies provided uninsured motorist (UM) benefits for Schrank's injuries. Because there is no causal connection between Castona's "use" of his motor vehicle and Schrank's

injuries, we conclude Sentry's policies provide no coverage. Accordingly, we reverse.

## FACTS

¶ 2.  The facts are essentially undisputed. On February 17, 2001, Schrank and his business partner, Brian Page, visited a local tavern in Plover, Wisconsin. While at the tavern, Schrank encountered Castona, an underage acquaintance of Schrank's, who arrived at the tavern on a snowmobile. Schrank determined Castona was extremely intoxicated and unable to drive. Schrank and Page drove Castona home.

¶ 3.  After arriving at Castona's house, Schrank escorted Castona to the front door. Rather than enter his house, Castona abruptly turned and walked toward his pickup truck, which was parked on the lawn. Castona entered the truck, put the keys in the ignition and appeared to start the truck, stating that he wanted to drive either to his mother's or his girlfriend's house. Schrank went over to Castona's truck and, as Castona sat in the vehicle, reached inside the driver's door across Castona and removed the keys, telling Castona he wasn't going anywhere because he was too drunk to drive.

¶ 4.  After taking the keys, Schrank backed away from the vehicle. Castona exited the truck and approached Schrank for the keys. Keys in hand, Schrank continued to back away as Castona attempted to recover the truck keys. Schrank recalled that he had backed up approximately ten steps or feet from the driver's side door when Castona jumped toward him to grab the keys. Schrank unsuccessfully attempted to hold Castona away with his left hand when Castona bumped him, causing Schrank to fall on the ice, severely injuring his ankle.

¶ 5. Castona's pickup truck was uninsured. Schrank sought insurance coverage from Sentry for the injuries sustained during the scuffle under his uninsured motorist coverage. Schrank's uninsured motorist claims were made pursuant to two policies of insurance: (1) A Plain Talk car policy issued by Sentry to Schrank and his wife Deborah Roman-Schrank (the personal auto policy) and (2) a commercial auto policy issued to Schrank's business, Specialized Computer Systems, Inc.

¶ 6. Sentry denied coverage and filed this action seeking a declaration that Schrank's injuries did not arise out of the ownership, maintenance or use of an uninsured motor vehicle. The Schranks filed a counterclaim seeking a declaration of coverage and damages for injuries sustained by Schrank during the scuffle. Both parties moved for summary judgment.

¶ 7. The circuit court denied Sentry's motion and granted the Schranks' motion, determining both Sentry policies provided uninsured motorist benefits to Schrank. We granted Sentry leave to file this interlocutory appeal of the circuit court's non-final order.

## STANDARD OF REVIEW

■

¶ 8. We review summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We first determine whether the complaint states a claim. *Id.* If the complaint states a claim, we then determine whether there is a material factual dispute and whether the moving party is entitled to judgment as a matter of law. WIS. STAT.

§ 802.08(2) (2003–04);[1] *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 9. This case also requires us to interpret the terms of an insurance policy. The interpretation of an insurance policy is a question of law, which we review de novo. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 13, 275 Wis. 2d 35, 683 N.W.2d 75. We construe insurance policies to give effect to the intent of the parties. *Id.* To do so, we give the words in the insurance policy their common and ordinary meaning, that is, the meaning a reasonable person in the position of the insured would have understood the words to mean. *Id.*, ¶ 14.

## DISCUSSION

¶ 10. The Schranks seek UM coverage under both the personal auto policy and the commercial auto policy. The personal auto policy provides, in relevant part:

> We promise to pay damages . . . the owner or operator of an uninsured *motor vehicle* is legally obligated to pay because of bodily injury *you* suffer in a *car accident* while *occupying* a *car* or, as a pedestrian, as a result of having been struck by an uninsured *motor vehicle*.

The personal auto policy defines "car accident" as "an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance, or use of a *car* or other *motor*

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

*vehicle."* Under the policy occupying means: "in, on or getting in or out of."[2]

¶ 11.   The commercial auto policy, which lists the vehicle Schrank was driving on February 17, 2001 as a "covered auto," provides, in relevant part,

> WE WILL PAY ALL SUMS THE 'INSURED' IS LEGALLY ENTITLED TO RECOVER AS COMPENSATORY DAMAGES FROM THE OWNER OR DRIVER OF AN 'UNINSURED MOTOR VEHICLE'. THE DAMAGES MUST RESULT FROM 'BODILY INJURY' SUSTAINED BY THE 'INSURED' CAUSED BY AN 'ACCIDENT'. THE OWNER'S OR DRIVER'S LIABILITY FOR THESE DAMAGES MUST RESULT FROM THE OWNERSHIP, MAINTENANCE OR USE OF THE 'UNINSURED MOTOR VEHICLE'.

The commercial auto policy defines "accident" as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' " The policy does not define "use."

¶ 12.   WISCONSIN STAT. § 632.32(4) mandates uninsured motorist coverage for the protection of persons legally entitled to recover damages from owners or operators of uninsured motor vehicles resulting from liability imposed by law for bodily injury arising out of

---

[2] The Schranks assert the personal auto policy violates WIS. STAT. § 632.32(6)(b)2.a. and WIS. STAT. § 632.32(5)(j) because it restricts UM coverage to individuals occupying a car or to individuals struck by an uninsured motor vehicle. The Schranks, however, believe that once the "offending" language is struck, the policy's remaining terms "dictate coverage." Sentry does not reply to this argument, apparently conceding that Schrank would be covered here if we find "use" by Castona, even though Schrank was neither occupying a car nor struck by the uninsured pickup truck.

722

the ownership, maintenance or use of a motor vehicle. *See Trampf v. Prudential Prop. & Cas. Co.*, 199 Wis. 2d 380, 384–86, 544 N.W.2d 596 (Ct. App. 1996). The UM coverage language at issue here is standard in many automobile liability policies. Our supreme court held that "[t]he words 'arising out of the use' are very broad, general and comprehensive terms," which should be broadly construed so as to maximize coverage to the insured. *Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.*, 95 Wis. 2d 215, 225, 290 N.W.2d 285 (1980). There is no UM coverage, however, unless there is a causal connection between the accident producing the injury and the inherent "use" of the vehicle. *See id.*

¶ 13.   Thus, the dispositive inquiry is whether there is a causal connection between the scuffle that caused Schrank's injuries and the inherent "use" of Castona's uninsured truck. We conclude there is not.

¶ 14.   Sentry argues Schrank's injuries did not arise out of the ownership, maintenance or use of Castona's pickup truck because Schrank's injuries were not causally related to the inherent use of the truck. The Schranks counter that it is

> reasonable to expect that concerned and responsible friends will remove the keys from the ignition of the vehicles their inebriated companions are attempting to drive. It can also be reasonably expected that a drunken buddy might not appreciate the favor and in trying to retrieve the keys inadvertently injure the good Samaritan.

The Schranks contend that if the drunk driver's conduct is directed at retrieving the vehicle keys, as opposed to injuring the good Samaritan, then the drunk

driver's conduct clearly arises out of the use and operation of the vehicle.

¶ 15.   We first note it can be argued that inserting the truck key into the ignition with the intention of starting the truck constitutes an inherent use of the truck. The circuit court so concluded. The obvious inherent use of the truck under this scenario is to turn on the truck for the purpose of driving it. This use is consistent with Castona's claim that he intended to drive to his mother's or girlfriend's house that night. Assuming this is so, the remaining question is whether there was a causal connection between Castona's actions that caused Schrank's injuries and Castona's effort to start the truck for the purpose of transporting himself to his mother's or girlfriend's residence.

¶ 16.   We conclude Schrank's injuries did not arise out of the use of Castona's truck. Schrank was injured as a result of a scuffle with Castona over the truck keys; the scuffle occurred some distance away from the truck. We acknowledge the summary judgment record shows that Castona was in the truck when Schrank removed the keys from the truck's ignition. However, any connection between being in the truck when the keys were removed and Schrank's injuries caused by the scuffle is too attenuated. Once Schrank pulled the keys out of the truck's ignition, he backed away. Castona exited the truck and pursued Schrank. In the course of attempting to retrieve the keys from Schrank, Castona bumped Schrank, causing Schrank to lose his balance on the slick, icy ground. Castona was not using the truck for any purpose during the scuffle or when he caused Schrank to fall and injure his ankle. The truck was simply parked on the lawn in front of Castona's house with the motor turned off. Castona's "use" of the truck in no way contributed to Schrank's injuries. In short,

there is no causal connection between Schrank's injuries and Castona's "use" of his truck.

¶ 17.   Therefore we conclude neither Sentry policy covered Schrank's injuries caused by Castona. Accordingly, we reverse the circuit court's summary judgment order against Sentry.

*By the Court.*—Order reversed.