COURT OF APPEALS
DECISION
DATED AND FILED

July 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1166**

STATE OF WISCONSIN

Cir. Ct. No. 2022TP3

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.T.T.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

  PETITIONER-RESPONDENT,

 V.

A.M.N.,

  RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Jackson County: ANNA L. BECKER, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] A.M.N. appeals the termination of her parental rights to her daughter, J.T.T. She argues that her attorney provided ineffective assistance of counsel by failing to timely file affidavits opposing summary judgment during the grounds phase. I conclude that although counsel performed deficiently by missing the statutory deadline, there is no reasonable probability that the affidavits, if they had been timely filed, would have changed the outcome of the proceeding. Because A.M.N. was not prejudiced by counsel's error, I affirm.

## BACKGROUND

¶2 J.T.T.'s father passed away when she was eight years old, after which she resided solely with her mother, A.M.N. In December 2020, when J.T.T. was ten years old, A.M.N. left J.T.T. and her siblings with a relative, saying that if the relative did not wish to care for the children, she should take them to social services. The County took custody of J.T.T. that same month. J.T.T. was found to be a child in need of protection or services ("CHIPS") in March 2021.

¶3 On April 21, 2021, A.M.N. had a virtual visit with J.T.T. After that, A.M.N. did not visit or communicate with J.T.T. until April 25, 2022.

¶4 The County filed a petition to terminate A.M.N.'s parental rights in July 2022. The petition alleged two grounds for termination: abandonment under WIS. STAT. § 48.415(1)(a)2., and continuing CHIPS under § 48.415(2).

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

¶5    A few months later, the County filed a motion for partial summary judgment as to abandonment.  A hearing was set for December 13, 2022.  On the date of the scheduled hearing, A.M.N.'s counsel filed two affidavits: one from A.M.N., and one from a client services worker in counsel's office.  The affidavits did not dispute that A.M.N. had failed to communicate with or contact J.T.T. for the year between April 21, 2021 and April 25, 2022; rather, they sought to demonstrate that A.M.N. had good cause for this failure.  At the hearing, the County objected to the affidavits and moved that they be struck.  The circuit court struck the affidavits as untimely because WIS. STAT. § 802.08(2) requires that affidavits opposing summary judgment be filed at least five days before the hearing.

¶6    The circuit court then concluded that there was no genuine issue of material fact that J.T.T. had been placed outside the home by a court order containing the notices required by WIS. STAT. § 48.356(2), that A.M.N. had not visited or communicated with J.T.T. between April 21, 2021 and April 25, 2022, and that A.M.N. had not established good cause for failing to visit or communicate with J.T.T.[2]  Accordingly, the court granted partial summary judgment as to abandonment and set the case for a dispositional hearing.  After the dispositional hearing, the court terminated A.M.N.'s parental rights.

---

[2] The circuit court also appears to have concluded that there was an additional period of abandonment, namely, from December 20, 2020, when J.T.T. was removed from the home, through April 21, 2021.  A.M.N. argues that this period cannot be considered as a period of abandonment because J.T.T. was not removed from the home pursuant to a court order with the statutory warnings until March 2021.  Although the record suggests that A.M.N. is correct on this point, I do not address this additional time period, given my determination with respect to the longer period at issue: April 21, 2021 to April 25, 2022.

¶7 A.M.N. filed a postdisposition motion. The motion alleged that A.M.N. was denied the effective assistance of counsel when her lawyer filed affidavits opposing summary judgment after the deadline to do so had elapsed, resulting in the affidavits being struck.

¶8 After an evidentiary hearing, the circuit court issued a written decision denying the postdisposition motion. The court concluded that counsel's failure to timely file the affidavits—which counsel testified resulted from her lack of knowledge of the statutory deadline, as well as failure to adequately manage her time—constituted deficient performance. However, the court concluded that the two affidavits at issue would not, had they been timely filed and therefore considered, have changed the result of the summary judgment hearing. Therefore, the court concluded, counsel's error did not prejudice A.M.N., and A.M.N. could not demonstrate ineffective assistance of counsel. The court accordingly denied the motion.

¶9 A.M.N. appeals.

## DISCUSSION

¶10 A parent facing the termination of his or her parental rights has a right to counsel. WIS. STAT. § 48.23(2)(b). This right includes the guarantee of "*effective* counsel." ***A.S. v. State***, 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992). Courts evaluate counsel's effectiveness in the termination of parental rights ("TPR") context using the same two-prong inquiry used in criminal cases: that of ***Strickland v. Washington***, 466 U.S. 668 (1984). ***A.S.***, 168 Wis. 2d at 1005. The ***Strickland*** test first asks whether counsel's performance was deficient: whether counsel made errors falling outside the "wide range of reasonable professional assistance." ***Strickland***, 466 U.S. at 689. If counsel has performed deficiently, the

question becomes whether the deficiency has resulted in prejudice to his or her client: whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is a lower bar than the more-likely-than-not preponderance of the evidence standard; it is "a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.* at 693-94.

¶11 I conclude, along with the circuit court, the parties, and A.M.N.'s trial counsel's own candid testimony, that trial counsel performed deficiently. Counsel's professional obligations include knowing and complying with relevant filing rules, including deadlines. *See State v. Felton*, 110 Wis. 2d 485, 506-07, 329 N.W.2d 161 (1983) (discussing lawyers' duty to "inform themselves of the relevant law prior to formulating a defense or determining a strategy or tactic"). As the court noted, there was no conceivable strategic advantage to be gained from late filing, so it is clear that the first *Strickland* prong is met here.

¶12 This leaves the question of whether this error prejudiced A.M.N. Counsel's error occurred during the first phase of the two-phase TPR procedure: the "grounds" or "unfitness" phase. *See Steven V. v. Kelley H.*, 2004 WI 47, ¶¶24-27, 271 Wis. 2d 1, 678 N.W.2d 856. During this phase, the circuit court determines whether the parent is unfit based on one of grounds listed in WIS. STAT. § 48.415, of which abandonment is one. *Steven V.*, 271 Wis. 2d 1, ¶¶24-25; § 48.415(1)(a)2. If the parent is determined to be unfit, the case proceeds to the dispositional phase, during which the court determines if termination is in the best interests of the child. *Steven V.*, 271 Wis. 2d 1, ¶27.

¶13 Here, counsel's late filing of the affidavits resulted in their exclusion from consideration during the grounds phase, and the circuit court granted partial

summary judgment as to unfitness, concluding that A.M.N. had abandoned J.T.T. This, in turn, led to the dispositional phase of the proceeding that ended with the termination of A.M.N.'s parental rights. To decide whether A.M.N. was prejudiced by the late filing, I must decide whether there is a "reasonable probability" that, had counsel not erred—that is, if she had filed the affidavits on time, making them part of the factual record the court would consider—summary judgment would have been denied.

¶14 Parental unfitness may be decided by summary judgment when there are no material facts in dispute. ***Id.***, ¶5. This court reviews a grant of summary judgment de novo. ***Fortier v. Flambeau Plastics Co.***, 164 Wis. 2d 639, 651, 476 N.W.2d 593 (Ct. App. 1991). Summary judgment is appropriate only when there are no material facts in dispute and a party is entitled to summary judgment as a matter of law. WIS. STAT. § 802.08; ***Tomlin v. State Farm Mut. Auto. Liab. Ins. Co.***, 95 Wis. 2d 215, 218, 290 N.W.2d 285 (1980). A circuit court, or an appellate court reviewing a grant of summary judgment, must take all facts pleaded by the nonmoving party, as well as all inferences reasonably derived from these facts, as true. ***Green Spring Farms v. Kersten***, 136 Wis. 2d 304, 317, 401 N.W.2d 816 (1987).

¶15 In this case, the County moved for partial summary judgment as to unfitness on the ground of abandonment: specifically, the minimum three-month abandonment ground set forth in WIS. STAT. § 48.415(1)(a)2.[3] This ground has

---

[3] WISCONSIN STAT. § 48.415(1)(a)2. states that abandonment is established when "the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by [WIS. STAT. §] 48.356(2) or [WIS. STAT. §] 938.356(2) and the parent has failed to visit or communicate with the child for a period of 3 months or longer."

two elements: (1) the child was placed, or continued in a placement, outside the parent's home pursuant to a court order that contained the TPR notice required by law; and (2) the parent failed to visit or communicate with the child for a period of three months or longer. WIS JI—CHILDREN 313 (2024). Even if both elements are satisfied, abandonment is not proved if the parent can show good cause for having failed to visit or communicate with the child during the relevant time period. WIS JI—CHILDREN 313 (2024); § 48.415(1)(c).

¶16 There is no dispute that J.T.T. was placed outside A.M.N.'s home by a court order containing the requisite notice from April 21, 2021 until April 25, 2022, nor that A.M.N. failed to visit or communicate with J.T.T. during this time. The affidavits that A.M.N.'s counsel filed late were aimed at showing that A.M.N. had good cause for not visiting or communicating with J.T.T. during this time.

¶17 The first of the two affidavits, from A.M.N., avers:

1. That during the years of 2021 and 2022 I had good cause for any alleged failure to visit or to communicate with [J.T.T.]

2. That my relocation to Minnesota was necessary in order to have the greatest opportunity and possibility of complying with my conditions so I could increase my contact with [J.T.T.]

3. That since April 21, 2021, I have made multiple attempts to contact [J.T.T.], both by calling multiple family members and other individuals to seek assistance in connecting more with [J.T.T.], and by calling representatives of the Department in order to try to remain in compliance and try to improve my connection with [J.T.T.]

4. That I have been incarcerated in Minnesota and have not had a reasonable opportunity to contact [J.T.T.]

5. That Jackson County did not provide me with the services needed to have increased contact with [J.T.T.]

7

as required by law, such as the Department's failure to provide transportation for visits or additional scheduling of video visits.

6. That I have mailed letters to [J.T.T.] from custody in Minnesota.

7. That I have inquired into and attempted to establish services pursuant to my conditions here while in custody in Minnesota and have been denied; this prevented and interfered with my ability to visit and otherwise communicate with [J.T.T.], as the Jackson County Department refused to continue working with me for [J.T.T.] in substantial part because I was not receiving services in Minnesota. This factor was outside of my control.

8. That placement providers have cancelled or rescheduled planned telephone visits with [J.T.T.] in such a way as to ultimately extinguish planned telephone visits; that this resulted in my not having a reasonable opportunity to visit or to otherwise communicate with my daughter, [J.T.T.]

9. That I have been informed by Department representatives that [J.T.T.] has experienced trauma, and that because of this the Department representatives required me to manage my attempts to communicate with [J.T.T.] within the boundaries of what the Department or the placement providers scheduled or arranged; this is outside of my control.

10. That while in custody I along with other incarcerated people have been on additional lock-down hours not due to behavior and have only limited hours during which I can make attempts to contact [J.T.T.] or a worker or placement provider regarding whether a visit has been set up or scheduled for me with [J.T.T.]

¶18 The second affidavit was from a client services worker in trial counsel's office. It pertained to records obtained from the jail in Minnesota where A.M.N. had been confined, and documented that A.M.N. had made phone calls to relatives regarding her children, including J.T.T. The first such call noted in this affidavit was placed on July 14, 2022, several months after the time period during which A.M.N. was alleged to have abandoned J.T.T.: again, April 21, 2021 to

8

April 25, 2022. The affidavit also appears to suggest that, according to the jail records, the County scheduled no visits between A.M.N. and J.T.T. after April 2, 2021, but the affidavit does not provide information about why visits were allegedly not scheduled.

¶19 Like the circuit court, I conclude that there is no reasonable probability that the affidavits A.M.N.'s counsel failed to timely file would have changed the outcome of the proceeding: that is, there is no reasonable probability that the affidavits, even if considered by the circuit court, would have resulted in the denial of the County's partial summary judgment motion. This is primarily because A.M.N., to defeat the County's motion, needed to allege facts that could support a conclusion that after J.T.T. was removed from A.M.N.'s home by a court order containing the required warnings, no three-month period had elapsed during which A.M.N. failed to visit or communicate with J.T.T. without good cause for the failure. But the affidavits focus heavily on the time during which A.M.N. was in jail in Minnesota. Notably, as in the circuit court, A.M.N. fails to provide this court with any time frame for her incarceration. However, the circuit court concluded—and A.M.N. does not dispute—that she was not incarcerated until sometime in the summer of 2022—outside of the April 21, 2021 to April 25, 2022 time period that the circuit court considered A.M.N. to have abandoned J.T.T. Because of this, paragraphs 4, 6, 7, and 10 of A.M.N.'s affidavit, all of which relate to A.M.N.'s period of incarceration, cannot establish the existence of a genuine issue of material fact as to good cause for A.M.N.'s lack of contact with J.T.T. during the relevant time.

¶20 The other paragraphs in A.M.N.'s affidavit are ambiguous regarding the time period to which they refer; it is possible that they refer to the relevant time period of April 21, 2021 to April 25, 2022. Because I must construe the

9

affidavit favorably to A.M.N., I will assume that these paragraphs do refer to this period. The paragraphs are nevertheless insufficient to create a genuine issue of material fact, because they make only general averments. Paragraph 1 of A.M.N.'s affidavit avers that she "had good cause for any alleged failure to visit or to communicate with [J.T.T.]," which is simply the conclusory claim that A.M.N. satisfied the legal standard of WIS. STAT. § 48.415(1)(c). Paragraph 2 alleges that A.M.N.'s move to Minnesota was intended to increase contact with J.T.T., but it does not give any information about what cause A.M.N. may have had for not contacting or visiting J.T.T. Paragraph 3 avers that "since April 21, 2021," A.M.N. made "multiple attempts" to contact J.T.T., but it provides nothing in the way of specifics, and in particular it does not state that these attempts occurred throughout the relevant time period of April 21, 2021 to April 25, 2022, such that there was no three-month period of abandonment. The same is true of paragraph 5, which alleges generally that the County failed to provide transportation for visits or "additional" video visits; paragraph 8, which alleges that some telephone visits were canceled or rescheduled; and paragraph 9, which alleges that the County regulated A.M.N.'s attempts to contact J.T.T. because of trauma J.T.T. had experienced.

¶21 To demonstrate a genuine issue of material fact, A.M.N. was obligated to set forth "'specific facts,' evidentiary in nature and admissible in form, showing that a genuine issue exists for trial." *See **Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.**, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999) (citation omitted). While portions of A.M.N.'s affidavit allege failings of the County in facilitating contact with J.T.T., they do not assert that these failings occurred with such frequency that they provide good cause for A.M.N.'s

failure to have contact with J.T.T. for each three-month period between April 21, 2021 and April 25, 2022.

¶22    Although a circuit court must construe summary judgment filings liberally, "with a view toward substantial justice to the parties," ***Green Spring Farms***, 136 Wis. 2d at 317, "allegations of ultimate facts [or] conclusions of law … do not meet the statutory requirements and will be disregarded," ***Hopper v. City of Madison***, 79 Wis. 2d 120, 130, 256 N.W.2d 139 (1977).  The lack of "specific facts" in the affidavits that A.M.N.'s counsel prepared, but did not timely file, means that they do not demonstrate the existence of a genuine factual dispute as to whether A.M.N. had good cause for failing to contact J.T.T. for every three-month period between April 21, 2021 and April 25, 2022.  From this, it necessarily follows that A.M.N.'s counsel's deficient performance—the late filing of the affidavits, resulting in them being struck—did not prejudice A.M.N., because there is no reasonable probability that the court's considering the affidavits would have changed its decision on summary judgment.

## CONCLUSION

¶23    For the foregoing reasons, I affirm the order terminating A.M.N.'s parental rights to J.T.T.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

11